ACCEPTED
12-15-00220-CV
TWELFTH COURT OF APPEALS
TYLER, TEXAS
11/18/2015 4:59:00 PM
Pam Estes
CLERK

**NO. 12-15-00220-CV**

**IN THE**

FILED IN
12th COURT OF APPEALS
TYLER, TEXAS
11/18/2015 4:59:00 PM
PAM ESTES
Clerk

**TWELTH COURT OF APPEALS**

**TYLER, TEXAS**

_____

**ANNA MARIE INMAN, Appellant**

**VS.**

**EQUABLE ASCENT FINANCIAL, LLC, Appellee**

_____

**APPELLANT'S BRIEF**

_____

Heather Keegan
State Bar No. 24065545
Richard Tomlinson
State Bar No. 20123500
**LONE STAR LEGAL AID**
1415 Fannin, 3rd Floor
Houston, Texas 77002
713/652-0077, ext. 1154
Facsimile: 713/652-3814
ATTORNEYS FOR APPELLANT

**ORAL ARGUMENT REQUESTED**

# IDENTITY OF THE PARTIES

Trial Court Cause Number:          2011B-1051

Plaintiff:          Equable Ascent Financial, LLC

Defendant:          Anna Marie Inman

Attorney for Plaintiff:          Dan G. Young
State Bar No. 22177250
Jenkins, Wagnon & Young, P.C.
P.O. Box 420
Lubbock, Texas 79408-0420
806-687-9172
Fax: 806-771-8755
dgyservice@jwylaw.com

Attorneys for Defendant:          Heather Keegan
State Bar No. 24065545
hkeegan@lonestarlegal.org
Richard Tomlinson
State Bar No. 20123500
rtomlinson@lonestarlegal.org
Lone Star Legal Aid
1415 Fannin, 3rd Floor
Houston, Texas 77002
713-652-0077, ext. 1154
Facsimile: 713-652-3814

# TABLE OF CONTENTS

Identity of Parties and Counsel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

Index of Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .v

Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

Issues Presented . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3

1.      Do the private documents attached to Hasenmiller's
        affidavit constitute competent summary judgment evidence
        or any evidentiary support for the summary judgment?

2.      Assuming the documents attached to Hasenmiller's affidavit
        were inadmissible or have no evidentiary value, did the trial
        court err in granting summary judgment based on
        conclusory statements in that affidavit?

Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3

Summary of the Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

I.      Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

II.     The private documents attached to the Hasenmiller affidavit
        are not competent summary judgment evidence. . . . . . . . . . . . . . . .8

        A.      The private documents attached to Hasenmiller's affidavit
                are not properly authenticated. . . . . . . . . . . . . . . . . . . . . . . .9

        B.      The private documents are hearsay in the
                absence of an authenticating affidavit. . . . . . . . . . . . . . . . . 14

C.     Even if properly admitted, the private documents
       are either incompetent summary evidence or lack
       evidentiary value. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

**III.**   Assuming the documents attached to Hasenmiller's
       affidavit were inadmissible, incompetent or lacking
       in evidentiary value, the trial court erred in granting
       summary judgment based on conclusory statements
       in that affidavit. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

       A.     The statement in Hasenmiller's affidavit regarding
              assignment of the account is a mere conclusion. . . . . . . . . . .17

       B.     The statements in Hasenmiller's affidavit relating to
              damages are mere conclusions. . . . . . . . . . . . . . . . . . . . . . . .18

**IV.**    Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Prayer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Certificate of Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Certificate of Compliance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

## Appendix

Plaintiff's Motion for Summary Judgment . . . . . . . . . . . . . . . . . . . . . . .Tab A

Defendant's Response to Plaintiff's Motion for Summary Judgment . .Tab B

Final Summary Judgment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Tab C

Defendant's Motion for Reconsideration/Motion for New Trial
and Request for Written Ruling on Defendant's Objections to
Summary Judgment Evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . .Tab D

Order denying reconsideration and refusing to rule on
objections . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .Tab E

# INDEX OF AUTHORITIES

**Cases**

*Abrego v. Harvest Credit Management VII, LLC*,
2010 WL 1718953 (Tex. App. – Corpus Christ 2010, no pet.) . . . . . . .14, 15

*Arkoma Basin Exploration Co. v. FMF Associates*,
249 S.W.3d 380 (Tex. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19

*Ayers v. Target National Bank*,
2012 WL 3043043 (Tex. App. – Houston [14th Dist.] 2012, no pet.) . . . . .14

*Baywood Estates Property Owners Association, Inc. v. Caolo*,
392 S.W.3d 776 (Tex. App. – Tyler 2012, no pet.) . . . . . . . . . . . . . . . . . .7

*Brown v. Mesa Distributors, Inc.*,
414 S.W.3d 279 (Tex. App.—Houston [1st Dist.] 2013, no pet.) . . . . . . . .16

*Brownlee v. Brownlee*,
665 S.W.2d 111 (Tex. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

*City of Houston v. Clear Creek Basin Auth.*,
589 S.W.2d 671 (Tex. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

*Collins v. County of El Paso*,
954 S.W.2d 137 (Tex.App.-El Paso, 1997, pet. denied) . . . . . . . . . . . . . .7

*Colvin v. TDECU*,
2012 WL 5544950 (Tex. App.—Houston [1st Dist.] 2012) . . . . . . . . . . . . .19

*The Travelers Insurance Company v. Joachim*,
315 S.W.3d 860 (Tex. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

*City of Keller v. Wilson*,
168 S.W.3d 802 (Tex. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

*Columbia Rio Grande Regional Hospital v. Stover*,
17 S.W.3d 387 (Tex. App. – Corpus Christi 2000, no pet.) . . . . . . . . . . 8, 9

*Fairfield Financial Group, Inc. v. Synnot,*
 300 S.W.3d 316 (Tex. App. – Austin 2009, no pet.) . . . . . . . . . . . . . . . . . .8

*Gilbert v. General Motors Corporation,*
 2006 WL 1714040 (Tex. App. – Fort Worth 2006, no pet.) . . . . . . . . . .9, 10

*Gonzalez v. McKinney Dodge Inc.,*
 2015 WL 3454399 (Tex. App. – Dallas 2015, pet. pending) . . . . . . . . . . .8

*In re Estate of Guerrero,*
 465 S.W.3d 693 (Tex. App. – Houston [14th Dist.] 2015, pet. pending) . . . 9

*Hourani v. Katzen,*
 305 S.W.3d 239 (Tex. App. – Houston [1st Dist.] 2009, pet. denied) . . . . . 8

*Kenny v. Portfolio Recovery Associates, LLC,*
 464 S.W.3d 29 (Tex. App. – Houston [1st Dist.] 2015, no pet.) . . . . . . . . .14

*Kleven v. Texas Department of Criminal Justice,*
 69 S.W.3d 341 (Tex. App- Texarkana 2002, no pet) . . . . . . . . . . . . . 10, 11

*Krishnan v. Law Offices of Preston Henrichson, P.C.,*
 83 S.W.3d 295 (Tex. App. – Corpus Christi 2002, pet. denied) . . . . . . . . 11

*Llopa, Inc. v. Nagel,*
 956 S.W.2d 82 (Tex. App. – San Antonio 1997, pet. denied) . . . . . . . . . .11

*Lyons v. Lyons,*
 2009 WL 89728 (Tex. App. – San Antonio 2009, pet. denied) . . . . . .12, 13

*MMP, Ltd. v. Jones,*
 710 S.W.2d 59 (Tex. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

*Owens-Corning Fiberglass Corporation v. Malone,*
 972 S.W.2d 35 (Tex. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

*Republic National Leasing Corporation v. Schindler,*
 717 S.W.2d 606 (Tex. 1986)(per curiam) . . . . . . . . . . . . . . . . . . . . . . .9

*Rockwall Commons Associates, Ltd. v. MRC Mortgage Grantor Trust I,*
 331 S.W.3d 500 (Tex. App. – El Paso 2010, no pet.) . . . . . . . . . . . . . . . .12

*Unifund CCR Partners v. Laco,*
 2009 WL 4879348 (Tex. App. – Dallas 2009, no pet.) . . . . . . . . . . . . . . 15

*United Blood Services v. Longoria,*
 938 S.W.2d 29, 30 (Tex. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

*Uribe v. Pharia, L.L.C.,*
 2014 WL 3555529 (Tex. App. – Corpus Christi 2014, no pet.) . . . . . . . . .14

*Valerus Compression Services v. Gregg County Appraisal District,*
 457 S.W.3d 520 (Tex. App.—Tyler 2015) . . . . . . . . . . . . . . . . . . . . . . .16

*Venable v. State,*
 113 S.W.3d 797 (Tex. App. – Beaumont  2003) . . . . . . . . . . . . . . . . . .12, 13

*Wande v. Pharia,*
 2011 WL 3820774 (Tex. App. – Houston [1st Dist.] 2011, no pet.) . . . . . .14

*Winchek v. Am. Exp. Travel Related Servs. Co.,*
 232 S.W.3d 197 (Tex. App.-Houston [1st Dist.] 2007, no pet.) . . . . . . . . . 19

**Rules**

TEX.R.CIV.P. 166a . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 9, 13

TEX.R.CIV.P. 193.7 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10, 11

TEX.R.EVID. 803 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

TEX.R.EVID. 901 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

TEX.R.EVID. 902 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10, 11, 12

**NO. 12-15-00220-CV**

**IN THE**

**TWELTH COURT OF APPEALS**

**TYLER, TEXAS**

_____


**ANNA MARIE INMAN, Appellant**

**VS.**

**EQUABLE ASCENT FINANCIAL, LLC, Appellee**

_____

**APPELLANT'S BRIEF**
_____


TO THE HONORABLE COURT OF APPEALS:

COMES NOW Appellant Anna Marie Inman ("Inman") and moves this Court to reverse the final summary judgment awarded to Equable Ascent Financial, LLC ("Equable") by the trial court. The documents attached to Hasenmiller's affidavit are inadmissible, incompetent or lacking in evidentiary value. The absence of any admissible or supportive documents attached to this affidavit render a number of vital statements

conclusory. Without those conclusory statements and the attached private documents, there is no basis for summary judgment.

## STATEMENT OF THE CASE

The underlying case is a suit to collect on a credit card debt filed by a debt buyer. Equable filed its suit in the 392nd District Court of Henderson County, alleging breach of contract and account stated claims. (C.R. 1-6) After being served, Inman filed a *pro se* answer. (C.R. 9-10) Equable filed a motion for summary judgment and a notice of hearing. (C.R. 11-52, 56-57) More than 7 days before the hearing, Inman retained counsel and filed a first amended answer with a general denial and a response to the motion. (C.R. 58-68) After a hearing, the trial court granted a final summary judgment, awarding Equable $6,185 in damages, $1,500 in attorney's fees through trial and additional attorney's fees on appeal. (C.R. 73-74) Inman then filed a timely motion for reconsideration and new trial as well as a request for a ruling on objections which were both denied by the trial court. (C.R. 75-78, 83-85) Inman then filed a timely notice of appeal.(C.R. 86-87)

## ISSUES PRESENTED

### Issue 1

Are the private documents attached to Hasenmiller's affidavit competent summary judgment evidence?

### Issue 2

Assuming the documents attached to Hasenmiller's affidavit are incompetent or lacking in any evidentiary value, did the trial court err in granting summary judgment based on conclusory statements in that affidavit?

## STATEMENT OF FACTS

Equable asserted in its petition that Inman failed to pay what she owed to an unnamed creditor on a credit card debt. (C.R. 1-6)

In the main body of its motion for summary judgment, Equable alleged once again that Inman owed a certain amount of unpaid credit card debt to an unnamed creditor and that Equable was the current owner of the debt. (C.R. 11-13) As support for this motion, Equable attached an affidavit signed by Jeff Hasenmiller; a number of documents, including a bill of sale reflecting the sale of a number of accounts from Chase Bank to Hilco Receivables, public documents relating to the merger of Hilco with Equable, a number of monthly statements, and a Providian cardholder

3

account agreement; and the affidavit of Dan G. Young on attorney's fees. (C.R. 15-52) Neither affidavit authenticated the documents attached to the motion. (C.R. 10, 50-52) Some of the print on a number of the attached documents is so small as to be illegible. (C.R. 25-44) The attached monthly statements include footers showing an internet address and an apparent print date of "2/25/2015[.]" (C.R. 25-44), long after Hasenmiller's affidavit was executed on August 20, 2011. (C.R. 14)

In Inman's response to the motion for summary judgment, she asserted that Hasenmiller's affidavit was not a proper business records affidavit, the bill of sale and merger documents were unauthenticated hearsay, the Providian account agreement was unauthenticated hearsay and the Chase monthly statements were both illegible and unauthenticated. (C.R. 62-66) Given the objections to this documentary evidence, Inman asserted that Equable had failed to prove the elements of its two claims. (C.R. 66) Inman explicitly requested the Court to consider "defendant's objections so they will be preserved for appeal." (C.R. 67)

At the hearing on the motion for summary judgment, Equable's counsel argued that summary judgment was appropriate based on the affidavit of Jeff Hasenmiller and the documents attached to that affidavit. (1 R.R. 4/23-5/1) He goes on to argue that the documents are not hearsay,

4

because they are "proven up by the affidavit itself to be non-hearsay . . . ." (1 R.R. 6/9-10) Inman's counsel repeatedly discussed the nature of her objections to the attached documentary evidence as being unauthenticated and hearsay and asked the trial court to rule on her objections. (1 R.R. 7/1-3, 8/4-5, 9/2-4) Specifically, she noted that Hasenmiller's affidavit was not a business records affidavit sufficient to both authenticate documents and render them non-hearsay business records. (1 R.R. 6/22-25) Recognizing that Hasenmiller's affidavit did not refer to the number of pages of documents which were attached, counsel for Equable argued that such language was not necessary to authenticate the documents. (1 R.R. 8/16-20) The judge then awarded summary judgment and refused to rule on each of Inman's objections, apparently treating the request as a request for findings of fact and conclusions of law. (1 R.R. 8/21-25, 9/2-7)

At the hearing on the motion for reconsideration and new trial and request for written ruling on objections, Inman's counsel specifically noted that she had previously requested the trial judge to rule on her objections and that the trial judge had mistakenly assumed that she was requesting findings of fact and conclusions of law. (2 R.R. 3/25-4/20) Counsel for Equable argued that the trial court was not required to make a written ruling on the objections. (2 R.R. 6/13-21) When the trial court asked whether

5

he needed to rule on Inman's objections to the summary judgment evidence, counsel for Equable stated that the trial court was not required to do that. (2 R.R. 14/3-10) Counsel for Inman suggested that the trial court was required to rule on her objections under the rules of appellate procedure to protect her "client's right[s,]" and the trial court indicated that the appellate court could order him to do it. (2 R.R. 14/11-18) When Inman's counsel asked if the judge was refusing to make a ruling on the objections, the trial court then explained that he was "overruling everything" and that he was not granting any of Inman's requests at the hearing, including her request for written rulings on her objections. (2 R.R. 14/21-15/7) The order on the motion for new trial and request for ruling on objections signed by the trial court crossed out all of the language providing for rulings on specific objections to summary judgment evidence. (C.R. 83-84)

## SUMMARY OF THE ARGUMENT

The trial court erred in considering the private documents as competent summary judgment evidence when they are unauthenticated, hearsay, illegible and lacking evidentiary value.

The trial court erred in awarding summary judgment for Equable. Since the documentary evidence was inadmissible, partially illegible and

6

failed to demonstrate the assignment of the credit card account at issue, the statements in Hasenmiller's affidavit were no more than conclusions. If the statements in Hasenmiller's affidavit are conclusions and the attached documents are inadmissible or have no evidentiary value, there is no evidence to support the summary judgment.

## ARGUMENT

### I.     Standard of Review

The purpose of summary judgment procedure "is not to deprive a litigant of his right to . . . trial, but to eliminate patently unmeritorious claims or untenable defenses." *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 n.5 (Tex. 1979).   In other words, summary judgment procedure should not "deprive litigants of their right to a full hearing on the merits of any real issue of fact." *Collins v. County of El Paso*, 954 S.W.2d 137, 145 (Tex.App.-El Paso 1997, pet. denied).

A traditional summary judgment, like the one in this case, is subject to *de novo* review on appeal. *The Travelers Insurance Company v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010).   A traditional motion for summary judgment is properly granted only when a movant establishes that there are no genuine issues of material fact and that he is entitled to judgment as a matter of law.   *Baywood Estates Property Owners Association, Inc. v.*

7

*Caolo*, 392 S.W.3d 776, 780 (Tex. App. – Tyler 2012, no pet.); TEX.R.CIV.P. 166a(c).  A plaintiff moving for traditional summary judgment must demonstrate that he is entitled to summary judgment as a matter of law on each element of his cause of action.  *MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex. 1986); *Hourani v. Katzen*, 305 S.W.3d 239, 248 (Tex. App. – Houston [1st Dist.] 2009, pet. denied).  In resolving whether the movant met its traditional motion for summary judgment burden, evidence favorable to the non-movant will be taken as true, every reasonable inference must be indulged in favor of the non-movant, and any doubts resolved in favor of the non-movant.  *Id*.

By contrast, a trial court's rulings concerning the admission or exclusion of summary judgment evidence is reviewed for an abuse of discretion.  *Gonzalez v. McKinney Dodge Inc.*, 2015 WL 3454399, *3 (Tex. App. – Dallas 2015, pet. pending); *Fairfield Financial Group, Inc. v. Synnot*, 300 S.W.3d 316, 319 (Tex. App. – Austin 2009, no pet.).  A trial court abuses its discretion if it acts without regard to guiding rules or principles. *Owens-Corning Fiberglass Corporation v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998).

**II.** **The private documents attached to Hasenmiller's affidavit are not competent summary judgment evidence.**

As a general rule, documents submitted as summary judgment evidence must be admissible under the rules of evidence. *United Blood Services v. Longoria*, 938 S.W.2d 29, 30 (Tex. 1997); *Columbia Rio Grande Regional Hospital v. Stover*, 17 S.W.3d 387, 396 (Tex. App. – Corpus Christi 2000, no pet.). The documents attached to Hasenmiller's affidavit are not competent summary judgment evidence, because they are unauthenticated, constitute hearsay, are partially illegible and fail to provide any support on an element of the claim.

**A.** **The private documents attached to Hasenmiller's affidavit are not authenticated.**

Copies of documents must be authenticated in order to be treated as competent summary judgment evidence. TEX.R.CIV.P. 166a(f); *Republic National Leasing Corporation v. Schindler*, 717 S.W.2d 606, 607 (Tex. 1986)(per curiam); *In re Estate of Guerrero*, 465 S.W.3d 693, 703-704 (Tex. App. – Houston [14th Dist.] 2015, pet. pending).

The rules allow two obvious means of authentication for documents submitted as summary judgment evidence. First, a sworn affidavit stating that the attached documents are true and correct copies of the originals authenticates copies sufficiently. *Republic National Leasing*, 717 S.W.2d

at 607; *Guerrero*, 465 S.W.3d at 704; *Gilbert v. General Motors Corporation*, 2006 WL 1714040, *4 (Tex. App. – Fort Worth 2006, no pet.). Second, some documents submitted as summary judgment evidence may be treated as self-authenticating. *Gilbert*, 2006 WL 1714040 at *4. For example, the evidence rules recognize a number of documents as self-authenticating while the rules of procedure recognize that documents produced by the opposing party in discovery are self-authenticating. TEX.R.EVID. 902; TEX.R.CIV.P. 193.7.

In this case, 49 pages of documents are attached to the motion for summary judgment between Exhibits A and B, including a bill of sale, some public merger documents, a number of monthly statements and a purported cardholder agreement, and Inman objected to all of these documents as unauthenticated. (C.R. 15-49, 62-64) Inman continues to assert that all of the private documents are unauthenticated and, thereby, do not serve as competent summary judgment evidence. (C.R. 15, 25-49) None of these private documents are authenticated by either of the two affidavits attached to the motion for summary judgment. (C.R. 14, 50-52)

While Exhibit A, Hasenmiller's affidavit, does make reference to business records purportedly relating to Inman's credit card account, nowhere does this affidavit verify the accuracy of the copies of the

10

documents attached to the motion. Given the absence of any language which verifies the accuracy of the documents, the attached private documents are not authenticated by that affidavit. *Gilbert*, 2006 WL 1714040 at *4 ("Although Gilbert's affidavit mentions some of the other attached documents, the affidavit makes no attempt whatsoever to authenticate the documents"); *Kleven v. Texas Department of Criminal Justice*, 69 S.W.3d 341, 344-346 (Tex. App- Texarkana 2002, no pet.)(affidavit failed to authenticate documents when it failed to state that the attached copies are true copies of the originals); *Llopa, Inc. v. Nagel*, 956 S.W.2d 82, 87 (Tex. App. – San Antonio 1997, pet. denied)(affidavit that only references attached documents does not authenticate). Had Exhibit A, Hasenmiller's affidavit, merely stated that the attached copies were true copies of original business records, they would have been treated as authenticated. *Krishnan v. Law Offices of Preston Henrichson, P.C.*, 83 S.W.3d 295, 300 (Tex. App. – Corpus Christi 2002, pet. denied)(medical report authenticated by affidavit which stated that the report was a true copy of the original).

In addition, there is no allegation that the attached documents are self-authenticating. First, there is nothing in the record that reflects that

11

the attached private records were produced in discovery by Inman, which would make them self-authenticating under Rule 193.7.

Second, none of the private records can be treated as self-authenticating under Rule 902, because these private documents do not fit any of the documents covered by the rule. While the private documents may appear to fit the provision for business records accompanied by an affidavit, TEX.R.EVID. 902(10), that part of the rule does not apply for the simple reason that the affidavits attached to the motion for summary judgment fail to authenticate these attached records. TEX.R.EVID. 902(10)(B)(second paragraph).

While only substantial compliance with the sample affidavit provided by Rule 902(10) is required, *Rockwall Commons Associates, Ltd. v. MRC Mortgage Grantor Trust I*, 331 S.W.3d 500, 509 (Tex. App. – El Paso 2010, no pet.), the failure to provide any authentication of attached records should be treated as less than substantial compliance. When deviation from Rule 902 hinders the underlying legislative purpose and fails to assure performance of the rule's essential requirements, there is no substantial compliance with the rule. *Venable v. State*, 113 S.W.3d 797, 800 (Tex. App. – Beaumont 2003).

Where the authenticating affidavit has no notary seal or any statement of personal knowledge, the appellate courts have refused to find substantial compliance with Rule 902(10). *Lyons v. Lyons*, 2009 WL 89728, *2 (Tex. App. – San Antonio 2009, pet. denied)(no substantial compliance when a notary seal was missing); *Venable*, 113 S.W.3d at 800-801 (no substantial compliance with no notary seal or statement of personal knowledge). Likewise, the failure to provide any authenticating language in either of the affidavits attached to the motion for summary judgment here demonstrates a lack of substantial compliance. A contrary rule would allow the admission of business records into evidence, or consideration as summary judgment evidence, without any assurance of accuracy, rendering the requirements for authentication in Rules 166a(f) and 901(a) entirely superfluous.

Moreover, some of the documents attached to the Plaintiff's Motion for Summary Judgment show on their face that they were printed years after Hasenmiller's affidavit was executed. (C.R. 14, 25-44) The affidavit cannot be in substantial compliance with Rule 902(10) if it is being offered to authenticate copies which were not in existence when Hasenmiller signed his affidavit. Inman's objection to the lack of authenticating language in the affidavit raises more than a mere technicality. Failure to

13

identify the attached exhibits in the affidavit, and failure to include language confirming that the exhibits are true and correct copies of the records of the business, are substantive deficiencies that go to the core of the legislative purpose behind Rule 902.

**B.    The private documents are hearsay in the absence of an adequate authenticating affidavit.**

Since the private documents are hearsay unless they fit the exception for business records set forth in Rule 803(6), they are admissible in this case only if they were properly authenticated under Rule 902(10). TEX.R.EVID. 803(6).   As explained in the previous section, though, neither of the affidavits attached to the motion for summary judgment actually authenticated the private documents.   This failure to authenticate demonstrates the absence of substantial compliance with Rule 902(10). As a result, the private documents must be treated as inadmissible evidence.   *Lyons*, 2009 WL 89728 at *1-2; *Venable*, 113 S.W.3d at 799-801.

**C.    Even if properly admitted, the private documents are incompetent or irrelevant summary judgment evidence.**

Even assuming all of the private documents were admissible, most of these documents do not serve as competent summary judgment evidence for two reasons.   First, the monthly statements (C.R. 25-44) are largely

14

illegible and, therefore, cannot be treated as competent summary judgment evidence. *Uribe v. Pharia, L.L.C.*, 2014 WL 3555529, *5 (Tex. App. – Corpus Christi 2014, no pet.); *Ayers v. Target National Bank*, 2012 WL 3043043, *2-5 (Tex. App. – Houston [14th Dist.] 2012, no pet.); *Wande v. Pharia*, 2011 WL 3820774, *5 (Tex. App. – Houston [1st Dist.] 2011, no pet.). As such, these documents provide no factual detail on the terms of the contract or the basis for calculating the amount of the claimed outstanding balance. Most importantly, the numbers in the monthly statements are illegible, thereby providing no factual support as to the amount of the claimed balance.

Second, the one remaining private document, the bill of sale, is only relevant to show that the account at issue was assigned from Chase Bank USA, N.A. to Hilco Receivables, LLC, the apparent predecessor of Equable Ascent Financial, LLC (C.R. 16-24). By itself, though, the bill of sale only demonstrates that a portfolio of receivables was assigned from Chase to Hilco. Without attaching Exhibits 1, C and D referenced in the bill of sale, the bill of sale provides no evidence that Inman's account was among the receivables being assigned. *Kenny v. Portfolio Recovery Associates, LLC*, 464 S.W.3d 29, 33 (Tex. App. – Houston [1st Dist.] 2015, no pet.); *Abrego v. Harvest Credit Management VII, LLC*, 2010 WL 1718953, *3 (Tex. App. –

15

Corpus Christ 2010, no pet.); *Unifund CCR Partners v. Laco*, 2009 WL 4879348, *4 (Tex. App. – Dallas 2009, no pet.).

**III.    Assuming the documents attached to Hasenmiller's affidavit were inadmissible or have no evidentiary value, the trial court erred in granting summary judgment based on conclusory statements in that affidavit.**

To grant summary judgment to Plaintiff, the trial court needed to have admissible, competent evidence showing (1) that Defendant owed money to Plaintiff, and (2) the amount of Plaintiff's damages.    Hasenmiller's affidavit fails to support the judgment, because it offers only unsupported conclusory statements on the elements Plaintiff was required to prove.

While a company officer's affidavit may support summary judgment, such an affidavit "is sufficient summary judgment evidence only when it gives detailed accounts of the facts it attests to or when it provides supporting documents which tend to support the statements made." *Brown v. Mesa Distributors, Inc.*, 414 S.W.3d 279, 297 (Tex. App.—Houston [1st Dist.] 2013, no pet.).   Conclusory statements in affidavits are not competent summary judgment evidence. *Valerus Compression Services v. Gregg County Appraisal District*, 457 S.W.3d 520, 530 (Tex. App.—Tyler 2015). A conclusory statement is one that does not provide the underlying facts to support the conclusion. *Id.*    For example, "a witness cannot prove that equipment is self-powered by merely saying it is self-powered."   *Id.*

16

**A.  The statement in Hasenmiller's affidavit regarding assignment of the account is a mere conclusion.**

The only evidence that Plaintiff is the owner of the account is the assertion at paragraph 5 of Hasenmiller's affidavit: "For good and valuable consideration, Plaintiff purchased the account from the Original Creditor or its assignee and Plaintiff is the current creditor of the Account." (C.R. 14) This statement is vague and completely devoid of any detail.  The factual statements are entirely general --- Hasenmiller does not give any information about when the account was purchased or for what consideration.  The affidavit does not specifically identify which party sold the account to Plaintiff --- the original creditor or an unnamed assignee. (C.R. 14)  The documents attached to the affidavit do not show anywhere that *this* account was sold by the original creditor to Plaintiff or its predecessor in interest. (C.R. 16-24)  Hasenmiller's statement that Plaintiff is the current creditor of the account is a legal conclusion for which he offers no factual basis.  The affiant's assertion of a legal conclusion is not sufficient summary judgment evidence to establish that Plaintiff is entitled to collect on this account.  *Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex. 1984).

**B.      The statements in Hasenmiller's affidavit relating to damages are mere conclusions.**

The trial court awarded damages to Plaintiff in the amount of $6165.80, plus attorney fees.  (C.R. 73-74)   As discussed above, the account statements attached to the Plaintiff's motion were unauthenticated and almost entirely illegible, so the only evidence before the court on the element of damages were Hasenmiller's following statements in his affidavit:

> 4.      The Defendant defaulted on payments to the Original Creditor.
>
> [. . . .]
>
> 6.      All credits and payments have been properly applied, Defendant is not entitled to any additional credits or offsets on the account of any kind, and the balance as set forth herein is currently due and owing.
>
> 7.      There is now due and payable from the Defendant the sum of $6165.80 plus costs and reasonable attorney fees as permitted by law or contract.
>
> (C.R. 14)

Hasenmiller's affidavit does not set forth the terms of the parties' credit agreement.  It contains no information about the rate of interest, the date of default, or how the damages were calculated.

The Hasenmiller affidavit's recitation of damages is conclusory and does not support summary judgment for Plaintiff. "Summary judgment evidence of damages in credit card cases is sufficient where it 'provide[s] detailed explanations of the cost of credit' and 'the methodology employed' to calculate the balance owed." *Colvin v. TDECU*, 2012 WL 5544950, *6 (Tex. App.—Houston [1st Dist.] 2012), quoting *Winchek v. Am. Exp. Travel Related Servs. Co.*, 232 S.W.3d 197, 205 (Tex. App.-Houston [1st Dist.] 2007, no pet.). The Hasenmiller affidavit falls short of the standard of proof required of summary judgment affidavits in credit card cases, because it contains no information whatsoever about the cost of credit or how the damages were calculated. (C.R. 14) Without those underlying facts, the affiant is ultimately presenting a bare conclusion and asking the court to "take his word for it" that the Plaintiff's damages are $6165.80. *Arkoma Basin Exploration Co. v. FMF Associates*, 249 S.W.3d 380, 389 (Tex. 2008). Taken as a whole, in the absence of authenticated supporting documentation, the Hasenmiller affidavit presents no competent summary judgment evidence on the issue of Plaintiff's damages.

## VII. Conclusion

Appellant Inman has established that there is no evidence to support the underlying summary judgment. As a result, the underlying final

19

summary judgment should be reversed and the case remanded for further proceedings.

<div align="center">**PRAYER**</div>

For the foregoing reasons, Appellant Inman respectfully prays that this Court reverse the final judgment in this cause and remand for further proceedings. Appellant also prays for all other and further relief to which she may show herself entitled.

Respectfully submitted,

/s/ Heather Keegan
Heather Keegan
SBN: 24065545
hkeegan@lonestarlegal.org
Richard Tomlinson
SBN: 20123500
rtomlinson@lonestarlegal.org
**LONE STAR LEGAL AID**
1415 Fannin, 3rd Floor
Houston, TX  77002
Ph:  (713) 652-0077, ext. 1154
Fax: (713) 652-3814

ATTORNEYS FOR APPELLANT

## CERTIFICATE OF SERVICE

Pursuant to T.R.A.P. 9.5, I hereby certify that I served a copy of the foregoing Appellant's Brief electronically or by fax, certified mail with receipt requested, or hand delivery, on this the 18th day of November, 2015, as follows:

Dan G. Young
Jenkins, Wagnon & Young, P.C.
P.O. Box 420
Lubbock, Texas 79408-0420
Fax: 806-771-8755
E-mail: dgyservice@jwylaw.com
ATTORNEY FOR APPELLEE

/s/ Richard Tomlinson
Richard Tomlinson

## CERTIFICATE OF COMPLIANCE

Pursuant to T.R.A.P. 9.4(i)(3), I hereby certify that this is a computer-generated document and the number of words in this brief is 6,455 based on a word count provided by my Microsoft Word word-processing program.

/s/ Richard Tomlinson
Richard Tomlinson

# TAB A

"NOTICE: THIS DOCUMENT CONTAINS SENSITIVE DATA."

NO. 2011B-1051

| | | |
|---|---|---|
| EQUABLE ASCENT FINANCIAL, LLC | § | IN THE 392nd JUDICIAL |
| | § | |
| v. | § | DISTRICT COURT OF |
| | § | |
| Anna Inman | § | HENDERSON COUNTY, TEXAS |

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff, EQUABLE ASCENT FINANCIAL, LLC, moves for Summary Judgment pursuant to Rule 166a of the Texas Rules of Civil Procedure, on all its claims against Defendant.

### I.
### BACKGROUND FACTS

Plaintiff has sued Defendant on a credit agreement. The motion is supported by the affidavit of Plaintiff's representative attached hereto as Exhibit A, which is incorporated into this Motion. In support of its request for attorney's fees, Plaintiff attaches the Affidavit of Dan G. Young as Exhibit B, which is incorporated herein.

Defendant entered into an agreement whereby credit was provided to Defendant in return for Defendant's promise to repay the credit, with interest. Despite Defendant's promises and obligations, Defendant defaulted and the balance remains due and owing. Plaintiff is the current owner of the debt.

The affidavit and other documentary evidence attached to this Motion establish as a matter of law that Defendant was provided with an extension of credit, that Defendant defaulted on Defendant's obligations under the agreement, and that as a result Plaintiff is entitled to the sums due and owing.

## II.
## CONCLUSION AND PRAYER

Plaintiff is entitled to Summary Judgment as a matter of law because Plaintiff has proved that no Genuine Issue of Material Fact exists regarding its claims against Defendant, and that Plaintiff is entitled to attorney's fees. For these reasons, Plaintiff asks the Court to grant this motion and enter a Final Summary Judgment on Plaintiff's claims.

**WHEREFORE**, EQUABLE ASCENT FINANCIAL, LLC requests that the Court grant its Motion and enter:

(a)     Final Summary Judgment on its claims against Defendant.

(b)     Judgment for Plaintiff for attorney's fees and court costs;

(c)     Judgment interest at the highest rate permitted by law and by the parties' agreement; and

(d)     All other and further relief as it just.

Respectfully submitted,

JENKINS, WAGNON & YOUNG, P.C.
P.O. Box 420
Lubbock, Texas 79408-0420
(806) 771-1234
FAX (806) 771-8755
Email: dgyservice@jwylaw.com

By: _____
Dan G. Young
State Bar No. 22177250
**ATTORNEY FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument was sent to the following on this __24__ day of March 2015 as follows:

*Via First Class Mail*
Anna Inman
105 Sienna Dr
Trinidad TX 75163-2151

_____
Dan G. Young

STATE OF ILLINOIS }
                   }:ss.        **AFFIDAVIT OF CLAIM**
COUNTY OF COOK     }

_Jeff Hasenmiller_, being first duly sworn on oath or upon affirmation, depose and state that I am the authorized agent and a custodian of record of EQUABLE ASCENT FINANCIAL, LLC the Plaintiff in the case captioned EQUABLE ASCENT FINANCIAL, LLC, and formerly known as Hilco Receivables, LLC v. Anna Inman, Case Number 2011B-1051 in the 392nd JUDICIAL DISTRICT COURT of HENDERSON, County Texas, that I am of legal age with full authority to make the statements contained herein, that I declare under penalty of perjury under the laws of the State of Illinois that the following is true and correct, and if called as a witness I could competently testify to the matters stated herein as follows:

1.    I have reviewed the books and records of Plaintiff and am familiar with the account of Anna Inman (the "Defendant"). Plaintiff's books and records contain account records and information of the account referenced below provided to Plaintiff by the Original Creditor referenced below or its assignee. The records are kept in the ordinary course of a regularly conducted business activity and are made either by a person having personal knowledge of the information contained therein or based on information conveyed by a person having personal knowledge of the information contained therein, and I know from my experience in reviewing such records and from common knowledge of how those records are made and maintained by individuals who have a business duty to make entries in the records accurately at or near the time of the event that they record.

2.    The records consist of both hard copy information and electronic information that is generated, stored and maintained in accordance with generally accepted standards in the retail and financial industries by individuals that possess the knowledge and training necessary to ensure the accuracy and reliability of the records.

3.    The business records furnished to Plaintiff show that Defendant opened an account with Chase Bank USA, N.A (WAMU) ("Original Creditor") bearing account number 4559905000931177 (the "Account").

4.    The Defendant defaulted on payments to the Original Creditor.

5.    For good and valuable consideration, Plaintiff purchased the Account from the Original Creditor or its assignee and Plaintiff is the current creditor of the Account.

6.    All credits and payments have been properly applied, Defendant is not entitled to any additional credits or offsets on the account of any kind, and the balance as set forth herein is currently due and owing.

7.    There is now due and payable from the Defendant the sum of $6165.80 plus costs and reasonable attorney fees as permitted by law or contract.

8.    To the best of Affiant's knowledge and based upon information provided by the Original Creditor and a search of the data banks of the Department of Defense Manpower Data Center said Defendant is not in the active military service of the United States.

Further Affiant sayeth not.

Dated this 30 day of AUG , 2011.          EQUABLE ASCENT FINANCIAL, LLC

                                          By: _____
                                          Jeff Hasenmiller
                                          Legal Agency Network Manager

SUBSCRIBED AND SWORN TO BEFORE ME on this 30 day of AUG , 2011.

_____
Notary Public                                          003508335

OFFICIAL SEAL
NANCY COHEN
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:05/09/14

EXHIBIT 4   service@jwylaw.com

14

## BILL OF SALE

Chase Bank USA, N.A. ("Seller"), for value received and pursuant to the terms and conditions of Credit Card Account Purchase Agreement dated November 20, 2009 between Seller and Hilco Receivables, LLC ("Purchaser"), its successors and assigns ("Credit Card Account Purchase Agreement"), hereby assigns effective as of the File Creation Date June 4, 2010 all rights, title and interest of Seller in and to those certain receivables, judgments or evidences of debt described in **Exhibit 1** attached hereto and made part hereof for all purposes. The names(s) of the Borrower(s), the Account Number assigned by Seller to the Borrower(s)' Account, the Unpaid Balance as of the File Creation Date referenced in the Credit Card Purchase Agreement for each and every Account, the Borrower(s)' Social Security Number, the Borrower(s)' Home Address, the Borrower(s)' Phone Number and other information related to the Borrowers and the Accounts as kept and maintained in the business records of the Seller in its ordinary course of business is contained in the File referenced in Exhibit C hereto and Exhibit D of the Credit Card Purchase Agreement and transferred to Purchaser herewith. Furthermore, Seller attests and affies that documents (as that term in used in Section 6 of this Credit Card Purchase Agreement) as maintained in the ordinary course of its business are available to Purchaser upon request as set forth in Section 6 of this Credit Card Purchase Agreement, including but not limited to applications by Borrower(s) whose Accounts are being transferred hereby as well as statements reflecting or related to the Unpaid Balance as of the File Creation Date as reflected in the Seller's business records.

Number of Accounts
Total Unpaid Balances
Premium
Due Seller

Amounts due to Seller by Purchaser in hereunder shall be paid U.S. Dollars by a wire transfer to be received by Seller no later than June 10, 2010 (the "Closing Date") by 2:00 p.m. Seller's time, as follows:

**Chase Bank USA, N.A.**
**ABA**
**Beneficiary Name:**
**Beneficiary Account:**

This Bill of Sale is executed without recourse except as stated in the Credit Card Account Purchase Agreement to which this is an Exhibit. No other representation of or warranty of title or enforceability is expressed or implied.

| Chase Bank USA, N.A. | Hilco Receivables, LLC |
|---|---|
| By: | By: |
| Date: June 7 2010 | Date: 6/17/10 |
| Title Team Leader | Title General Counsel |



# OFFICE OF THE SECRETARY OF STATE

JESSE WHITE • Secretary of State

0287940-9

12/22/2009

MICHAEL WALSH
1120 W LAKE COOK RD STE A
BUFFALO GROVE, IL 60089-0000

RE EQUABLE ASCENT FINANCIAL, LLC

DEAR SIR OR MADAM:

ARTICLES OF MERGER FOR THE ABOVE-NAMED COMPANY HAVE BEEN
PLACED ON FILE.

THE REQUIRED FEE IS HEREBY ACKNOWLEDGED.

SINCERELY YOURS,

JESSE WHITE
SECRETARY OF STATE
DEPARTMENT OF BUSINESS SERVICES
LIMITED LIABILITY COMPANY SECTION
(217) 524-8008

JW

**Form LLC-37.25**

April 2008

Secretary of State Jesse White
Department of Business Services
Limited Liability Division
501 S. Second St., Rm. 351
Springfield, IL 62756
217-524-8008
www.cyberdriveillinois.com

Payment must be made by check or money order payable to Secretary of State. Filing fee is $100, but if merger of more than two entities, $50 for each additional entity.

**Illinois**
**Limited Liability Company Act**
**Articles of Merger**

Must be typewritten.

This space for use by Secretary of State.

Date: 12/22/09
Filing Fee: $100
Approved: JC

**FILED**

DEC 2 2 2009

JESSE WHITE
SECRETARY OF STATE

ASSIGNED FILE #: 02879409

This space for use by Secretary of State.

1. Names of Entities proposing to merge, and State or Country of Organization:

| Name of Entity | Type of Entity (Corporation, Limited Liability Company, Limited Partnership, General Partnership or other permitted entity) | Domestic State or Country | Illinois Secretary of State File Number (if any) |
|---|---|---|---|
| Hilco Receivables, LLC | Limited Liability Company | Illinois | 0040264-8 |
| Equable Ascent Financial, LLC | Limited Liability Company | Delaware | 0287940-9 |

2. The plan of merger has been approved and signed by each Limited Liability Company and other entity that is to merge. If a corporation is a party to the merger, a copy of the plan as approved is attached to these Articles of Merger.

3. a. Name of Surviving Entity: Equable Ascent Financial, LLC

   b. Address of Surviving Entity: 1120 W. Lake Cook Road, Suite A, Buffalo Grove, IL 60089

4. Effective date of merger: (check one)
   a. ☐ the filing date, or
   b. ☒ a later date, but not more than 30 days subsequent to the filing date:  December 31, 2009
   
   Month, Day, Year

5. All Limited Liability Companies that are parties to this merger and were on record with the Illinois Secretary of State prior to Jan. 1, 1998, have elected in their operating agreements to be governed by the Amendatory Act of 1997.

6. If the survivor is a Limited Liability Company, indicate changes that are necessary to its Articles of Organization by reason of this merger:

   N/A - survivor is a Delaware entity

Printed on recycled paper.
Printed by authority of the State of Illinois. May 2008 — 1M — LLC 10.2

0120 - 01/01/2010 C T System Online

dgyservice@jwylaw.com 7

LLC-37.25

7. For the Limited Liability Companies that are parties to the merger, complete the following:

| Name of LLC | Jurisdiction | Organization Date | Date of Admission to Illinois (foreign LLC's) |
|---|---|---|---|
| Hilco Receivables, LLC | Illinois | 4/14/2000 | N/A |
| Equable Ascent Financial, LLC | Delaware | 9/08/2009 | 11-20-2009 |

8. If the surviving entity is not a Limited Liability Company, the entity agrees that it may be served with process in Illinois and is subject to liability in any action or proceeding for the enforcement of any liability or obligation of a Limited Liability Company previously subject to suit in this State, which is to merge, and for the enforcement, as provided in this Act, of the right of members of any Limited Liability Company to receive payment for their interest against the surviving entity.

9. The undersigned entities caused these Articles of Merger to be signed by the duly authorized person, each of whom affirms, under penalty of perjury, that the facts stated herein are true.

Dated December 21, 2009
             Month & Day        Year

1. _____
   Signature

   JOHN B. PRIEST, Manager
   Name and Title (type or print)

   HILCO RECEIVABLES LLC
   Name if a Corporation or other Entity

2. _____
   Signature

   JOHN B. PRIEST, Manager
   Name and Title (type or print)

   EQUABLE ASCENT FINANCIAL, LLC
   Name if a Corporation or other Entity

3. _____
   Signature

   _____
   Name and Title (type or print)

   _____
   Name if a Corporation or other Entity

4. _____
   Signature

   _____
   Name and Title (type or print)

   _____
   Name if a Corporation or other Entity

If more space is needed, please attach additional sheets of this size.

**Signatures must be in black ink on an original document.
Carbon copy, photocopy or rubber stamp signatures
may only be used on conformed copies.**

Printed on recycled paper.
Printed by authority of the State of Illinois. May 2006 — IM — LLC 30.2

C 199 4500000 CT System Online

dgyservice@jwylaw.com 8

# AGREEMENT AND PLAN OF MERGER

THIS AGREEMENT AND PLAN OF MERGER (this "Agreement") is entered into as of December 21, 2009, to be effective as of the Effective Date, pursuant to Section 18-209 of the Limited Liability Company Act of the State of Delaware (the "Delaware Act") and Section 180/37-20 of the Limited Liability Company Act of the State of Illinois (the "Illinois Act"), by and between Hilco Receivables, LLC, an Illinois limited liability company ("Hilco") and Equable Ascent Financial, LLC, a Delaware limited liability company ("Equable").

## RECITALS:

WHEREAS, Hilco is an Illinois limited liability company;

WHEREAS, for a variety of business reasons, the Board of Directors of Hilco (the "Managers") and the members of Hilco (the "Owners") wish to merge Hilco into a Delaware limited liability company;

WHEREAS, in order to accomplish the foregoing, the Managers and the Owners have caused Equable to be formed under the laws of Delaware; and

WHEREAS, the Mangers and the Owners deem it advisable and wish to merge Hilco into Equable on the terms and conditions hereinafter set forth.

## AGREEMENT:

NOW THEREFORE, in consideration of the foregoing and the representations, warranties, covenants and agreements herein contained, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

1. <u>Merger: Name of Surviving Corporation</u>. On the Effective Date (defined herein), Hilco shall be merged with and into Equable. The name of the surviving entity shall be Equable Ascent Financial, LLC (the "Surviving Entity").

2. <u>Equity</u>. Each unit of membership interest in Hilco outstanding immediately prior to the Effective Date shall, automatically and without further action by any party, convert into and be deemed an issued and outstanding unit of membership interest in Equable, held of record by each Owner in the same proportion such units were held in Hilco.

3. <u>Terms and Conditions of Merger</u>. The terms and conditions of the merger shall be as follows:

(a) The Certificate of Formation of Equable on the Effective Date shall be and remain the Certificate of Formation of the Surviving Entity, without amendment or change, until the same shall be altered, amended or repealed as therein provided.

(b)     The Operating Agreement of Hilco on the Effective Date shall be and remain the Operating Agreement of the Surviving Entity, without amendment or change, until the same shall be altered, amended or repealed as therein provided.

(c)     The Managers and the officers, if any, of Hilco on the Effective Date shall continue in office as the Managers and the officers, respectively, of the Surviving Entity until their respective successors have been elected and qualified.

(d)     The principal office of the Surviving Entity shall be located at 1120 W. Lake Cook Road, Suite A, Buffalo Grove, IL 60089.

4.     Effect of Merger.

(a)     On the Effective Date, Hilco shall merge with and into Equable and the separate existence of Hilco shall cease.

(b)     The merger shall have all the effects set forth in the Delaware Act and the Illinois Act. In addition to and not in limitation of the foregoing, (i) the Surviving Entity shall possess all property, real, personal and mixed, tangible and intangible, and all debts due on whatever account, and all other choses in action and all and every other interest, of or belonging to or due to the parties hereto and the same shall be deemed taken and transferred to and vested in the Surviving Entity without further act or deed, and the title to any such property or rights, or any interest therein, vested in Hilco shall not revert to or be in any way impaired by reason of the merger; (ii) the Surviving Entity shall be liable for all the liabilities and obligations of the respective parties hereto in the same manner and to the same extent as if the Surviving Entity had itself incurred such liabilities and obligations and had contracted therefor, and any claim existing or any action or proceeding pending by or against the respective parties hereto may be prosecuted to judgment as if the merger and not taken place, or the Surviving Entity may be substituted in its place; and (iii) neither the rights of creditors, nor any liens upon the property of the respective parties hereto shall be impaired by the merger, but such liens shall be limited to the property upon which they were liens immediately prior to the Effective Date.

5.     Effective Date. This Agreement shall become effective on December 31, 2009 (the "Effective Date").

6.     Approval by the Board of Directors and Members of Equable. This Agreement shall be submitted to the Managers and the Owners, in their capacity as the managers and members of Equable, for approval in the manner provided by the applicable laws of the State of Delaware at a meeting or by written consent in lieu of a meeting in the manner provided by the applicable laws of the State of Delaware.

7.     Approval by the Board of Directors and Members of Hilco. This Agreement shall be submitted to the Managers and the Owners, in their capacity as the managers and members of Hilco, for approval in the manner provided by the applicable laws of the State of Illinois at a meeting or by written consent in lieu of a meeting in the manner provided by the applicable laws of the State of Illinois.

-2-

dgyservice@jwylaw.com 10

20

8. **Further Assurances.** During the period from the date first above written to the Effective Date, each of the parties hereto agrees to use all reasonable efforts to execute and deliver, or cause to be executed and delivered, any and all reports, instruments or other documents and to take, or cause to be taken, any and all such actions necessary, proper or advisable to consummate and make effective the transactions contemplated by this Agreement.

9. **Termination.** Notwithstanding any other provision of this Agreement, this Agreement may be terminated and abandoned at any time prior to the filing date by an instrument signed on behalf of both Hilco and Equable.

10. **Amendment.** This Agreement may be amended in writing if signed on behalf of both Hilco and Equable at any time prior to the filing date.

11. **Complete Agreement.** This Agreement contains the entire agreement between the parties hereto with respect to the merger of Hilco into Equable, and supersedes all prior agreements and understandings, both written and oral, among the parties hereto with respect to the subject matter hereof.

12. **Headings.** The descriptive headings of the sections of this Agreement are merely provided for convenience of reference and shall not used in the interpretation of this Agreement.

13. **No Third Parties.** Nothing herein expressed or implied is intended or shall be construed to confer upon or give to any person or entity, other than the parties to this Agreement, any rights or remedies under or by reason of this Agreement.

14. **Governing Law.** This Agreement shall be governed by and construed in accordance with the laws of the State of Delaware, without giving regard to any provisions thereof regarding choice of laws.

15. **Gender.** As used in this Agreement, each gender specific term shall have a comparable meaning, whether used in a masculine, feminine or gender-neutral form.

16. **Counterparts.** This Agreement may be signed in one or more counterparts, each of which shall be deemed an original for all purposes and all of which taken together shall constitute one and the same original.

[Signature Page Follows]

dgyservice@jwylaw.com 11

21

IN WITNESS WHEREOF, each of the parties hereto has caused this Agreement and Plan of Merger to be executed by its duly authorized representative, all as of the day and date first above written.

HILCO RECEIVABLES, LLC

By:
Name: JOHN R. PRIEST
Title: CEO

EQUABLE ASCENT FINANCIAL, LLC

By:
Name: JOHN R. PRIEST
Title: CEO

-4-

dgyservice@jwylaw.com 12

# Delaware

## The First State

I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT COPY OF THE CERTIFICATE OF MERGER, WHICH MERGES:

"HILCO RECEIVABLES, LLC", AN ILLINOIS LIMITED LIABILITY COMPANY,

WITH AND INTO "EQUABLE ASCENT FINANCIAL, LLC" UNDER THE NAME OF "EQUABLE ASCENT FINANCIAL, LLC", A LIMITED LIABILITY COMPANY ORGANIZED AND EXISTING UNDER THE LAWS OF THE STATE OF DELAWARE, AS RECEIVED AND FILED IN THIS OFFICE THE TWENTY-SECOND DAY OF DECEMBER, A.D. 2009, AT 5:49 O'CLOCK P.M.

AND I DO HEREBY FURTHER CERTIFY THAT THE EFFECTIVE DATE OF THE AFORESAID CERTIFICATE OF MERGER IS THE THIRTY-FIRST DAY OF DECEMBER, A.D. 2009.

4726399  8100M

091129223

You may verify this certificate online
at corp.delaware.gov/authver.shtml

AUTHENTICATION: 7717988

DATE: 12-22-09

Jeffrey W. Bullock, Secretary of State

dgyservice@jwylaw.com 13

23

State of Delaware
Secretary of State
Division of Corporations
Delivered 05:51 PM 12/22/2009
FILED 05:49 PM 12/22/2009
SRV 091123223 - 4726969 FILE

## State of Delaware
## Certificate of Merger of a Foreign Limited Liability Company
## Into a Domestic Limited Liability Company

Pursuant to Title 6, Section 18-209 of the Delaware Limited Liability Company Act.

First: The name of the surviving Limited Liability Company is _____
Equable Ascent Financial, LLC _____, a Delaware Limited Liability Company.

Second: The name of the Limited Liability Company being merged into this surviving
Limited Liability Company is Hilco Receivables, LLC _____.
The jurisdiction in which this Limited Liability Company was formed is Illinois _____.

Third: The Agreement of Merger has been approved and executed by both Limited
Liability Companies.

Fourth: The name of the surviving Limited Liability Company is _____
Equable Ascent Financial, LLC _____.

Fifth: The executed agreement of merger is on file at _____
1120 West Lake Cook Road, Suite A, Buffalo Grove, IL 60089 _____,
the principal place of business of the surviving Limited Liability Company.

Sixth: A copy of the agreement of merger will be furnished by the surviving Limited
Liability Company on request, without cost, to any member of the Limited Liability
Company or any person holding an interest in any other business entity which is to merge
or consolidate.

Seventh: The effective date of this merger is December 31, 2009.

IN WITNESS WHEREOF, said Limited Liability Company has caused this certificate
to be signed by an authorized person, this 21st day of December , A.D., 2009 .

By: _____
Authorized Person

Name: JOHN B. PRIEST
Print or Type

| Payment Due Date | New Balance | Past Due Amount | Minimum Payment |
|---|---|---|---|
| 11/25/09 | $4,856.62 | $0.00 | $160.00 |

Account number: 4558 6060 0206 1177

$ _____ .

I want to purchase optional
Chase Fraud Detector.
I've read the Summary and
Disclosures on back of form.

_____    _____

455990500093117700036900004866920000000005925643

ANNA SWAN
113 GENNA DR
TRINIDAD TX 75163-0101

CARDMEMBER SERVICE
PO BOX 94014
PALATINE IL 80094-4014

500016028 218500093117746

## CHASE

Statement Date:
09/19/09 - 10/19/09

Minimum Payment: $160.00
Payment Due Date: 11/25/09

Manage your account online:
www.chase.com/creditcards

Additional contact information
conveniently located on reverse side

### ACCOUNT SUMMARY

Account Number: 4558 6060 0206 1177

| | |
|---|---|
| Previous Balance | $4,801.86 |
| Payment, Credits | -$160.00 |
| Purchases, Cash, Debits | +$75.00 |
| Finance Charges | +$120.66 |
| New Balance | $4,856.62 |

| | |
|---|---|
| Total Credit Line | $5,250 |
| Available Credit | $393 |
| Cash Access Line | $262 |
| Available for Cash | $48 |

### ACCOUNT ACTIVITY

| Date of Transaction | Merchant Name or Transaction Description | $ Amount |
|---|---|---|
| 10/01 | Payment Thank You Electronic Chk | -160.00 |
| 10/09 | WAL-MART #0518 GUN BARREL CI TX | 95.00 |

### FINANCE CHARGES

| Category | Daily Periodic Rate 30 days in cycle | Corresp APR | Average Daily Balance | Finance Charge Due To Periodic Rate | Transaction Fee / Service Charge | Accumulated Fin Charge | FINANCE CHARGED |
|---|---|---|---|---|---|---|---|
| Purchases | V .08216 | 29.99% | $4,680.96 | $115.30 | $0.00 | $0.00 | $115.35 |
| Cash advances | V .08216 | 29.99% | $210.89 | $5.30 | $0.00 | $0.00 | $5.30 |
| Total finance charges | | | | | | | $120.66 |

Effective Annual Percentage Rate (APR): 29.99%

Please see Information About Your Account section for balance computation method, grace period, and other important information.
The Corresponding APR is the rate of interest if you pay when you carry a balance on any transaction category.
The Effective APR represents your total finance charges - including transaction fees - for cash advances, purchases, and balance transfer fees - expressed as a percentage.

### IMPORTANT NEWS

Thank you for being a valued Cardmember.

This Statement is a Facsimile - Not an original

dgyservice@jwylaw.com 15
2/25/2015
25

Address Change Request

Please provide information below only if the address information on front is incorrect.

Street Address _____

City _____

State _____

Zip _____

Home Phone: _____

Work Phone: _____

E-mail Address: _____

**To contact us regarding your account:**

| By Telephone: | | Card Inquiries to: | Mail Payments to: | Visit Our Website: |
|---|---|---|---|---|
| In U.S. | 1-800-945-2000 | | | www.chase.com/creditcards |
| Español | 1-800-446-3308 | P.O. Box 15290 | P.O. Box 94014 | |
| TDD | 1-800-955-8060 | Wilmington, DE 19850-5290 | Palatine, IL 60094-4014 | |
| Pay by phone | 1-800-436-7958 | | | |
| Outside U.S. and collect | 1-302-594-8200 | | | |

*Information About Your Account* — [dense illegible fine print]

https://oneview.jpmchase.net/OneView/stmtPrintSubmit.star

dgyservice@jwylaw.com 16
2/25/2015
26

| Payment Due Date | New Balance | Past Due Amount | Minimum Payment |
|---|---|---|---|
| 12/07/09 | $5,081.40 | $45*.00 | $284.00 |

Account number: 4599 0080 0080 1177

$ _____

Make your check payable to:
Chase Card Services.
Please write account enclosed.
New address or e-mail? Write on back.

4599905000931177000384000050614 0000000000000004

ANNA INMAN
113 SIENNA DR
TRINIDAD TX 75163-2181

CARDMEMBER SERVICE
PO BOX 94014
PALATINE IL 60094-4014

5000160284 21850009311774

## CHASE ○

Statement Date
10/17/09 - 11/19/09

Minimum Payment $284.00
Payment Due Date 12/07/09

Manage your account online.
www.chase.com/creditcard.

Additional contact information
conveniently located on reverse side.

### ACCOUNT SUMMARY

Account Number: 4599 0080 0080 1177

| | | | |
|---|---|---|---|
| Previous Balance | $4,662.93 | Total Credit Line | $4,000 |
| Purchases, Cash, Debits | +289.10 | Available Credit | $0 |
| Finance Charges | +$129.38 | Cash Access Line | $248 |
| New Balance | $5,081.40 | Available for Cash | $0 |

### ACCOUNT ACTIVITY

| Date of Transaction | Merchant Name or Transaction Description | $ Amount |
|---|---|---|
| 10/17 | BROOKSHIRES 555 SEVEN POINTS TX | 29.10 |
| 11/09 | LATE FEE | 89.00 |

### FINANCE CHARGES

| Category | Daily Periodic Rate Corresp. 31 days in cycle | APR | Average Daily Balance | Finance Charge Due To Periodic Rate | Transaction Fee / Access Charge | Accumulated Fin Charge | FINANCE CHARGES |
|---|---|---|---|---|---|---|---|
| Purchases | V .05316% | 20.99* | $4,748.81 | $126.97 | $0.00 | $0.00 | $126.97 |
| Cash advances | V .05316% | 27.99* | $210.21 | $5.51 | $0.00 | $0.00 | $5.51 |
| Total finance charges | | | | | | | $129.38 |

Effective Annual Percentage Rate (APR): 33.99%

Please see Information About Your Account section for balance computation method, grace period, and other important information.

The Corresponding APR is the rate of interest you pay when you carry a balance on any transaction category.
The Effective APR represents your total finance charges - including transaction fees such as cash advance and balance transfer fees - expressed as a percentage.

### IMPORTANT NEWS

Chase Gift Cards  The Perfect Gift
Available in any amount from $25 to $500
Accepted at millions of locations worldwide
Order online at chase.com/GiftCardOrder
or simply by a Chase Branch today!

This Statement is a Facsimile - Not an original

dgyservice@jwylaw.com 17
2/25/2015
27

Address Change Request

Please provide information below only if the address information on front is incorrect.

Street Address _____

City _____

State ____

Zip _____

Home Phone _____

Work Phone _____

E-mail Address _____

**To contact us regarding your account:**

| By Telephone: | Send Inquiries to: | Mail Payments to: | Visit Our Website: |
|---|---|---|---|
| In U.S. 1-800-945-2000 | | | |

**Information About Your Account**

*Crediting of Payments:* [illegible fine print]

*(remaining body text illegible)*

| Payment Due Date | New Balance | Past Due Amount | Minimum Payment |
|---|---|---|---|
| 01/05/10 | $5,233.34 | $394.00 | $691.00 |

Account number: 4559 0050 0093 1177

Make your check payable to:
Chase Card Services.
Please write account number.
New address or e-mail. Print on back.

$ _____

4559905000931177000060100006226640000000000000001

ANNA INMAN
113 SIENNA DR
TRINIDAD TX 75163-2101

CARDMEMBER SERVICE
PO BOX 94014
PALATINE IL 60094-4014

1500016028 218500093117776

CHASE 🅞

Statement Date
11/16/09 - 12/15/09

Minimum Payment $691.00
Payment Due Date 01/05/10

Manage your account online
your chase.com/creditcard

Additional contact information
conveniently located on reverse side

**ACCOUNT SUMMARY**

Account Number 4559 0050 0093 1177

| | | | |
|---|---|---|---|
| Previous Balance | $4,691.40 | Total Credit Line | $4,900 |
| Purchases, Cash, Debits | +$59.00 | Available Credit | $0 |
| Finance Charges | +$125.44 | Cash Access Line | $245 |
| New Balance | $4,633.67 | Available for Cash | $0 |

Your credit card account is past due. Please send payment immediately. Call 1-800-955-9030 (collect 1-302-594-8200) today.

**ACCOUNT ACTIVITY**

| Date of Transaction | Merchant Name or Transaction Description | $ Amount |
|---|---|---|
| 12/07 | LATE FEE | 39.00 |

**FINANCE CHARGES**

| Category | Daily Periodic Rate Corresp. 30 days in cycle / APR | Average Daily Balance | Finance Charge Due To Periodic Rate | Transaction Fee / Bank's Charge | Accumulated Fin Charge | FINANCE CHARGES |
|---|---|---|---|---|---|---|
| Purchases | V .08216 - 29.99% | $4,006.27 | $120.99 | $0.00 | $0.00 | $120.99 |
| Cash advance | V .08216 - 29.99% | $221.70 | $5.45 | $0.00 | $0.00 | $5.45 |
| Total finance charges | | | | | | $126.44 |

Effective Annual Percentage Rate (APR): 29.99%

Please see Information About Your Account section for balance computation method, grace period, and other important information.

The Corresponding APR is the rate of interest you pay when you carry a balance on any transaction category.
The Effective APR represents your total finance charges - including transaction fees such as cash advance and balance transfer fees - expressed as a percentage.

**This Statement is a Facsimile - Not an original**

Address Change Request

Please provide information below only if the address information on front is incorrect.

Street Address:

City

State

Zip

Home Phone:

Work Phone:

E-mail Address:

**To contact us regarding your account:**

| By Telephone: | Send inquiries to: | Mail Payments to: | Visit Our Website: |
|---|---|---|---|
| In U.S. 1-800-945-2000 | P.O. Box 15298 | P.O. Box 94014 | www.chase.com/creditcards |
| Español 1-800-446-3308 | Wilmington, DE 19850-5298 | Palatine, IL 60094-4014 | |
| TDD 1-800-955-8060 | | | |
| Pay by phone 1-800-436-7958 | | | |
| Outside U.S. call collect 1-302-594-8200 | | | |

*Information About Your Account*

[The remainder of this section consists of fine print that is illegible.]

| Payment Due Date | New Balance | Past Due Amount | Minimum Payment |
|---|---|---|---|
| 02/25/10 | $5,400.44 | $301.00 | $529.00 |

Account number: 4549 8880 0098 1177

$ _____

Make your check payable to:
Chase Card Services.
Please write account enclosed.
Have additions or e-mail? Here on back.

4559905000931177000082900034008400000000000000000S

ANNA INMAN
113 SIENNA DR
TRINIDAD TX 75163-2181

CARDMEMBER SERVICE
PO BOX 94014
PALATINE IL 60094-4014

⑆500016028⑆ 2685000931177⑈

**CHASE ○**

Statement Date
12/12/09 - 01/12/10

Minimum Payment $529.00
Payment Due Date: 02/25/10

Manage your account online
www.chase.com/cardmemberservices

Additional contact information
immediately located on reverse side

## ACCOUNT SUMMARY

Account Number: 4549 8880 0098 1177

| | | | |
|---|---|---|---|
| Previous Balance | $5,299.44 | Total Credit Line | $4,000 |
| Purchases, Credits, Debits | +$80.00 | Available Credit | $0 |
| Finance Charges | +$185.00 | Cash Access Line | $846 |
| New Balance | $5,400.44 | Available for Cash | $0 |

The charging privileges on your credit card account have been revoked. You no longer have the ability to use your credit card account for purchases. We can help you get back on track. Call 1-800-955-8220 (collect 1-809-894-8200) today.

## ACCOUNT ACTIVITY

| Date of Transaction | Merchant Name or Transaction Description | $ Amount |
|---|---|---|
| 01/09 | LATE FEE | $9.00 |

## FINANCE CHARGES

| Category | Daily Periodic Rate Corresp 31 days in cycle | Corresp APR | Average Daily Balance | Finance Charge Due To Periodic Rate | Transaction Fee / Service Charge | Accumulated Fin Charge | FINANCE CHARGES |
|---|---|---|---|---|---|---|---|
| Purchases | V .08310% | 29.99% | $6,075.29 | $129.21 | $0.00 | $0.00 | $129.21 |
| Cash advances | V .08316% | 29.99% | $227.91 | $5.79 | $0.00 | $0.00 | $5.79 |
| Total finance charges | | | | | | | $185.00 |

Effective Annual Percentage Rate (APR): 29.99%

Please see Information About Your Account section for balance computation method, grace period, and other important information.

The Corresponding APR is the rate of interest you pay when you carry a balance on any transaction category. The Effective APR represents your total finance charges - including transaction fees such as cash advance and balance transfer fees - expressed as a percentage.

## IMPORTANT NEWS

Try TurboTax Free Edition for your simple return
or Get a 56 percent Discount on
TurboTax Online Federal Products
visit chase.com/txtxx

This Statement is a Facsimile - Not an original

Address Change Request

Please provide information below only if the address information on front is incorrect

Street Address: _____

City: _____

State: ___ ___

Zip: _____

Home Phone: ___ ___ ___

Work Phone: ___ ___ ___

E-mail Address: _____

**To contact us regarding your account:**

| By Telephone: | ? | ☒ | 🖥 |
|---|---|---|---|
| In U.S. 1-800-945-2000 | Send inquiries to: | Mail Payments to: | Visit Our Website: |
| En español 1-888-446-3308 | P.O. Box 15298 | P.O. Box 94014 | www.chase.com/cardmember's |
| TDD 1-800-955-8060 | Wilmington, DE 19850-5298 | Palatine, IL 60094-4014 | |
| Pay by phone 1-800-436-7958 | | | |
| Outside U.S. call collect 1-302-594-8200 | | | |

**Information About Your Account**

*[fine print illegible]*

**Notice About Electronic Check Conversion**

*[fine print illegible]*

**Credit/Debit Payments**

*[fine print illegible]*

**Annual Renewal Notice**

*[fine print illegible]*

**Explanation of Finance Charges**

*[fine print illegible]*

**Billing Rights Summary — In Case of Errors or Questions About Your Bill**

*[fine print illegible]*

**Special Rule for Credit Card Purchases**

*[fine print illegible]*

dgyservice@jwylaw.com 22

2/25/2015

32

| Payment Due Date | New Balance | Past Due Amount | Minimum Payment |
|---|---|---|---|
| 03/05/10 | $5,618.51 | $859.00 | $1,864.00 |

Account number: 4559 6060 0093 1177

$ _____ . _____

Make your check payable to:
Chase Card Services.
Please write amount enclosed.
New address or e-mail? Print on back.

4559905000931177001064000056193000000000000009

0873 BX 4 0 410 0
ANNA INMAN
118 SIENNA DR
TRINIDAD TX 75180-2151

CARDMEMBER SERVICE
PO BOX 94014
PALATINE IL 60094-4014

⑆5000160028⑆ 218500093117740

## CHASE

Manage your account online

**ACCOUNT SUMMARY**

Account Number: 4559 6060 6093 1177

| | |
|---|---|
| Previous Balance | $5,400.84 |
| Fees Charged | +$78.00 |
| Interest Charged | +$140.47 |
| New Balance | $5,618.51 |
| Opening/Closing Date | 01/12/10 - 02/11/10 |
| Total Credit Line | $4,800 |
| Available Credit | $0 |
| Cash Access Line | $845 |
| Available for Cash | $0 |

**PAYMENT INFORMATION**

| | |
|---|---|
| New Balance | $5,618.51 |
| Payment Due Date | 03/05/10 |
| Minimum Payment Due | $1,864.00 |

Late Payment Warning: If we do not receive your minimum payment by the date listed above, you may have to pay up to a $39.00 late fee and your APRs will be subject to increase to a maximum Penalty APR of 29.99%.

Minimum Payment Warning: If you make only the minimum payment each period, you will pay more in interest and it will take you longer to pay off your balance. For example:

| If you make no additional charges using this card and each month you pay... | You will pay off the balance shown on this statement in about... | And you will end up paying an estimated total of... |
|---|---|---|
| Only the minimum payment | 30 years | $16,232.00 |
| $340.00 | 3 years | $6,527.00 (Savings=$10,025.00) |

If you would like information about credit counseling services, call 1-866-797-2885.

You haven't made the required payments and your credit card account is 60 days past due. As a result, your credit bureau may be updated with a negative entry. Please send your payment immediately or call us at 1-800-954-9080 (collect 1-302-594-8200) today.

Important Message: You Are Overlimit
Your statement balance exceeds your credit line. You should make a payment that includes the overlimit amount to bring the balance under your credit line.

**ACCOUNT ACTIVITY**

| Date of Transaction | Merchant Name or Transaction Description | $ Amount |
|---|---|---|
| | FEES CHARGED | |
| 02/07 | LATE FEE | $0.00 |
| 01/18 | OVERLIMIT FEE | 39.00 |
| | TOTAL FEES FOR THIS PERIOD | $78.00 |
| | INTEREST CHARGED | |
| 02/12 | PURCHASE INTEREST CHARGE | 121.53 |
| 02/12 | CASH * INTEREST CHARGE * | 6.94 |
| | TOTAL INTEREST FOR THIS PERIOD | $140.47 |

| 2010 Totals Year-to-Date | |
|---|---|
| Total fees charged in 2010 | $78.00 |
| Total interest charged in 2010 | $140.47 |

Year-to-date totals reflect all charges minus any refunds applied to your account on or after January 31, 2010.

**This Statement is a Facsimile - Not an original**

dgyservice@jwylaw.com 23
2/25/2015
33

Address Change Request

Please provide information below only if the address information on front is incorrect.

Street Address: ______________________

City: ______________________

State: ____

Zip: ________ ______

Home Phone: ______ ______ ______

Work Phone: ______ ______ ______

E-mail Address: ______________________

**To contact us regarding your account:**

| By Telephone: | Send inquiries to: | Mail Payments to: | Visit Our Website: |
|---|---|---|---|
| In U.S. [illegible]<br>Español [illegible]<br>TDD [illegible]<br>Pay by phone [illegible]<br>Outside U.S. call collect [illegible] | P.O. Box [illegible]<br>Wilmington, DE [illegible] | P.O. Box [illegible]<br>[illegible] | [illegible] |

[illegible]

Statement Date: 01/13/10 - 02/13/10
Account Number: 4589 9058 9098 1177
Page 2 of 2

## INTEREST CHARGES

Your Annual Percentage Rate (APR) is the annual interest rate on your account.

| Balance Type | Annual Percentage Rate (APR) In Days In Cycle | Balance Subject To Interest Rate | Interest Charges | Accrued Interest Charges |
|---|---|---|---|---|
| Purchases | 29.07% (v) | $8,891.80 | $134.50 | $0.00 |
| Cash Advances | 29.99% (v) | $24.18 | $0.04 | $0.00 |

(v) = Variable Rate

Please see Information About Your Account section for the Calculation of Balance Subject to Interest Rate, Annual Renewal Notice, How to Avoid Interest on Purchases, and other important information, as applicable.

**This Statement is a Facsimile - Not an original**

dgyservice@jwylaw.com 25

| Payment Due Date | New Balance | Past Due Amount | Minimum Payment |
|---|---|---|---|
| 04/08/10 | $5,769.19 | $1,054.00 | $1,291.00 |

Account number: 4889 9050 00F0 1177

$ _____ .

Make your check payable to:
Chase Card Services.
Please write account enclosed
New address or e-mail? Print on back

4559905000931177001291000057891600000000000000006

VDH SSX 007V10 D
ANNA INMAN
118 SIENNA DR
TRINIDAD TX 70 HSI-2101

CARDMEMBER SERVICE
PO BOX 94014
PALATINE IL 60094-4014

C500016028C 21850009311774

## CHASE O

Manage your account online:
[illegible]

Additional contact information
conveniently located on reverse side

### ACCOUNT SUMMARY

Account Number 4889 9050 00F0 1177

| | |
|---|---|
| Previous Balance | 55,519.91 |
| Fees Charged | +$69.00 |
| Interest Charged | +$180.68 |
| New Balance | $5,769.19 |
| | |
| Opening/Closing Date | 02/13/10 - 03/13/10 |
| Total Credit Line | $4,600 |
| Available Credit | $0 |
| Cash Access Line | $346 |
| Available for Cash | $0 |

### PAYMENT INFORMATION

| | |
|---|---|
| New Balance | $5,769.19 |
| Payment Due Date | 04/08/10 |
| Minimum Payment Due | $1,291.00 |

Late Payment Warning: If we do not receive your minimum payment by the date listed above, you may have to pay up to a $39.00 late fee and your APRs will be subject to increase to a maximum Penalty APR of 29.99%.

Minimum Payment Warning: If you make only the minimum payment each period, you will pay more in interest and it will take you longer to pay off your balance. For example:

| If you make no additional charges using this card and each month you pay... | You will pay off the balance shown on this statement in about... | And you will end up paying an estimated total of... |
|---|---|---|
| Only the minimum payment | 20 years | $10,009 |
| $243 | 5 years | $6,689 (Savings=$1,073) |

If you would like information about credit counseling services, call 1-888-707-2135.

No not too late to resolve the outstanding balance on your credit card account. We have a variety of payment options that may be right for you. Call 1-888-762-7547 (outside 1-302-594-8200) today.

Important Message: You Are Overlimit
Your statement balance exceeds your credit line. You should make a payment that includes the overlimit amount to bring the balance under your credit line

### ACCOUNT ACTIVITY

| Date of Transaction | Merchant Name or Transaction Description | $ Amount |
|---|---|---|
| 03/08 | LATE FEE | $9.00 |
| | TOTAL FEES FOR THIS PERIOD | $39.00 |
| 03/12 | PURCHASE INTEREST CHARGE | 126.05 |
| 03/13 | CASH ADVANCE INTEREST CHARGE | 0.00 |
| | TOTAL INTEREST FOR THIS PERIOD | $180.68 |

| | |
|---|---|
| Total fees charged in 2010 | $117.00 |
| Total interest charged in 2010 | $271.52 |

Year-to-date totals reflect all charges minus any refunds applied to your account on or after January 01, 2010

**This Statement is a Facsimile - Not an original**

dgyservice@jwylaw.com 26
2/25/2015
36

Address Change Request

Please provide information below only if the address information on front is incorrect

Street Address

City:

State:

Zip:

Home Phone:

Work Phone:

E-mail Address:

**To contact us regarding your account:**

| By Telephone | | Send Inquiries to: | Mail Payments to: | Visit Our Website: |
|---|---|---|---|---|
| In U.S. | 1-800-945-2000 | P.O. Box 15298 | P.O. Box 94014 | www.chase.com |
| Español | 1-478-448-2889 | Wilmington, DE 19850-5298 | Palatine, IL 60094-4014 | |
| TDD | 1-800-955-8060 | | | |

Statement Date. 02/18/10 - 06/18/10
Account Number: 4490 0000 0000 1177

Page 2 of 2

**INTEREST CHARGES**

Your Annual Percentage Rate (APR) is the annual interest rate on your account.

| Balance Type | Annual Percentage Rate (APR) 30 Days in Cycle | Balance Subject To Interest Rate | Interest Charges | Accrued Interest Charges |
|---|---|---|---|---|
| Purchases | 29.97% (.) | $5,448.74 | $135.95 | $0.00 |
| Cash Advances | 29.99% (v) | $0.00 | $0.00 | $0.00 |

(v) = Variable Rate

Please see Information About Your Account section for the Calculation of Balance Subject to Interest Rate, Annual Renewal Notice, How to Avoid Interest on Purchases, and other important information as applicable.

**This Statement is a Facsimile - Not an original**

dgyservice@jwylaw.com 28
2/25/2015
38

| Payment Due Date | New Balance | Past Due Amount | Minimum Payment |
|---|---|---|---|
| 05/03/10 | $6,977.86 | $1,591.00 | $1,869.80 |

Account number: 4959 6060 686:3 1177

$ _____

Make your check payable to:
Chase Card Services.
Put new write account enclosed
Your address or e-mail? Print on back

4559905000931177001539000059775600000000000008

smao sev 2 ms10 0
ANNA INMAN
116 SIENNA DR
TRINIDAD TX 76180-2151

CARDMEMBER SERVICE
PO BOX 94014
PALATINE, IL 60094-4014

:500016028: 2185000931177 4"

## CHASE

Manage your account online:
www.chase*.adventureboard

Additional content information
conveniently located on reverse side

This Statement is a Facsimile - Not an original

### ACCOUNT SUMMARY

Account Number: 4959 6060 6060 1177

| | |
|---|---|
| Previous Balance | $6,789.16 |
| Fees Charged | +$39.00 |
| Interest Charged | +$149.40 |
| New Balance | $6,977.86 |
| Opening/Closing Date | 03/13/10 - 04/12/10 |
| Total Credit Line | $4,800 |
| Available Credit | $0 |
| Cash Access Line | $245 |
| Available for Cash | $0 |

### PAYMENT INFORMATION

| | |
|---|---|
| New Balance | 26,977.89 |
| Payment Due Date | 05/03/10 |
| Minimum Payment Due | $1,869.00 |

Late Payment Warning: If we do not receive your minimum payment by the date listed above, you may have to pay up to a $39.00 late fee and your APRs will be subject to increase to a maximum Penalty APR of 29.99%.

Minimum Payment Warning: If you make only the minimum payment each period, you will pay more in interest and it will take you longer to pay off your balance. For example:

| If you make no additional charges using this card and each month you pay... | You will pay off the balance shown on this statement in about... | And you will end up paying an estimated total of... |
|---|---|---|
| Only the minimum payment | 30 years | $20,518 |
| $265 | 3 years | $9,177 (Savings=$11,635) |

If you would like information about credit counseling services, call 1-888-707-2695

You haven't made the required payments and your credit card account is 180 days past due. You can still turn things around. Call us today at 1-866-792-7647 (collect 1-602-594-6200) so that we can find a solution for your situation.

Important Message: You Are Overlimit
Your statement balance exceeds your credit line. You should make a payment that includes the overlimit amount to bring the balance under your credit line.

### ACCOUNT ACTIVITY

| Date of Transaction | Merchant Name or Transaction Description | $ Amount |
|---|---|---|
| | FEES CHARGED | |
| 0-03 | LATE FEE | $39.00 |
| | TOTAL FEES FOR THIS PERIOD | $39.00 |
| | INTEREST CHARGED | |
| 04/17 | PURCHASE INTEREST CHARGE | 148.17 |
| 04/12 | CASH ADVANCE INTEREST CHARGE | 0.23 |
| | TOTAL INTEREST FOR THIS PERIOD | $149.40 |

| | |
|---|---|
| Total fees charged in 2010 | $156.00 |
| Total interest charged in 2010 | $420.72 |

Year-to-date totals reflect all charges minus any refunds applied to your account on or after January 31, 2010

Address Change Request

Please provide information below only if the address information on front is incorrect.

Street Address _____

City _____

State _____

Zip _____

Home Phone: _____

Work Phone: _____

E-mail Address _____

**To contact us regarding your account:**

By Telephone:
In U.S.     1-800-XXX-XXXX
Espanol     1-XXX-XXX-XXXX
TDD         1-XXX-XXX-XXXX
Pay by phone 1-XXX-XXX-XXXX
Outside U.S. call collect
            1-XXX-XXX-XXXX

Send Inquiries to:
P.O. Box 15298
Wilmington, DE 19850-5298

Mail Payments to:
P.O. Box 94014
Palatine, IL 60094-4014

Visit Our Website
www.chase.com/creditcards

Statement Date: 03/13/10 - 04/12/10
Account Number: 4846 0080 0043 1177
Page 3 of 3

## INTEREST CHARGES

Your Annual Percentage Rate (APR) is the annual interest rate on your account.

| Balance Type | Annual Percentage Rate (APR) 31 Days in Cycle | Balance Subject To Interest Rate | Interest Charges | Annual Interest Charges |
|---|---|---|---|---|
| Purchases | 22.21% (v) | $5,021.25 | $145.17 | $0.00 |
| Cash Advances | 29.99% (v) | $844.79 | $0.00 | $0.00 |

(v) = Variable Rate

Please see Information About Your Account section for the Calculation of Balance Subject to Interest Rate, Annual Renewal Notice, How to Avoid Interest on Purchases, and other important information, as applicable.

**This Statement is a Facsimile - Not an original**

dgyservice@jwylaw.com 31
2/25/2015
41

| Payment Due Date | New Balance | Past Due Amount | Minimum Payment |
|---|---|---|---|
| 05/03/10 | $6,165.80 | $1,498.00 | $1,768.00 |

Account number: 4559 9050 6080 1177

$ _____ .

Make your check payable to:
Chase Card Services
Please write amount enclosed
Send address or e-mail? Print on back

4559905D00931177001788000066580000000000000005

ANNA INMAN
113 SIENNA DR
TRINIDAD TX 75163-2181

CARDMEMBER SERVICE
PO BOX 94014
PALATINE IL 60094-4014

1:5000160 28:: 2 1850009311 7774"

## CHASE ◯

Manage your account online
www.chase.com/creditcards

Additional account information
conveniently located on reverse side

| ACCOUNT SUMMARY | |
|---|---|
| Account Number 4544 9058 8283 1177 | |
| Previous Balance | $5,877.98 |
| Fees Charged | +$598.00 |
| Interest Charged | +$149.34 |
| New Balance | $6,165.80 |
| Opening/Closing Date | 04/18/10 - 05/18/10 |
| Total Credit Line | $4,800 |
| Available Credit | $0 |
| Cash Access Line | $240 |
| Available for Cash | $0 |

| PAYMENT INFORMATION | |
|---|---|
| New Balance | $6,165.80 |
| Payment Due Date | 05/03/10 |
| Minimum Payment Due | $1,768.00 |

Late Payment Warning: If we do not receive your minimum payment by the date listed above, you may have to pay up to a $39.00 late fee and your APRs will be subject to increase to a maximum Penalty APR of 29.99%.

Minimum Payment Warning: If you make only the minimum payment each period, you will pay more in interest and it will take you longer to pay off your balance. For example:

| If you make no additional charges using this card and each month you pay... | You will pay off the balance shown on this statement in about... | And you will end up paying an estimated total of... |
|---|---|---|
| Only the minimum payment | 31 years | $11,207 |
| $296 | 3 years | $9,468 (Savings=$1,741) |

If you would like information about credit counseling services, call 1-876 797 8885.

This outstanding balance on your credit card account is scheduled to be written off as a bad debt shortly. As a result, your credit bureau will be updated with a negative rating that could last for up to seven years. We can still help, but you need to call us now at 1-800-972-7647 (collect 1-802-594-9200).

Important Message: You Are Overdrawn!
Your statement balance exceeds your credit line. You should make a payment that includes the overlimit amount to bring the balance under your credit line.

| ACCOUNT ACTIVITY | | |
|---|---|---|
| Date of Transaction | Merchant Name or Transaction Description | $ Amount |
| 05/03 | LATE FEE | 39.00 |
| | TOTAL FEES FOR THIS PERIOD | $39.00 |
| 04 17 | PURCHASE INTEREST CHARGE | 143.05 |
| 05/13 | CASH ADVANCE INTEREST CHARGE | 6.19 |
| | TOTAL INTEREST FOR THIS PERIOD | $149.34 |

| | |
|---|---|
| Total fees charged in 2010 | $195.00 |
| Total interest charged in 2010 | $498.99 |

Year-to-date totals reflect all charges minus any refunds applied to your account on or after January 01, 2010.

**This Statement is a Facsimile - Not an original**

Address Change Request

Please provide information below only if the address information on front is incorrect.

Street Address

City

State

Zip

Home Phone

Work Phone

E-mail Address

| To contact us regarding your account: | | | | |
|---|---|---|---|---|
| By Telephone: | | Send Inquiries to: | Mail Payments to: | Visit Our Website: |
| In U.S. | 1-800-945-2000 | P.O. Box 15299 | P.O. Box 94014 | www.chase.com/cardmembersvc |
| Español | 1-888-446-3308 | Wilmington, DE 19850-5298 | Palatine, IL 60094-4014 | |
| TDD | 1-800-955-8060 | | | |
| Pay by phone 1-800-436-7958 | | | | |
| Outside U.S. call collect | | | | |
| 1-302-594-8200 | | | | |

*[Fine print informational text — illegible]*

Statement Date: 04/13/10 - 05/13/10
Account Number: 4899 9080 0099 1177
Page 2 of 2

## INTEREST CHARGES

Your Annual Percentage Rate (APR) is the annual interest rate on your account.

| Balance Type | Annual Percentage Rate (APR) 30 Days In Cycle | Balance Subject To Interest Rate | Interest Charges | Accrued Interest Charges |
|---|---|---|---|---|
| Purchases | 29.99% (v) | $5,003.59 | $143.95 | $0.00 |
| Cash Advances | 29.99 · · (v) | $200.98 | $9.10 | $0.00 |

(v) = Variable Rate

Please see Information About Your Account section for the Calculation of Balance Subject to Interest Rate, Annual Renewal Notice, How to Avoid Interest on Purchases, and other important information, as applicable.

**This Statement is a Facsimile - Not an original**

# PROVIDIAN VISA® or MASTERCARD® ACCOUNT AGREEMENT

Congratulations and Welcome! We have opened a Visa or MasterCard credit card account in your name (the "Account"). This brochure tells you how your Account works and serves as your Account Agreement. In this Agreement, "you" and "your" mean each person for whom we have opened this Account. "We," "our," "us" and "us" mean Providian National Bank, the issuer of your Account. The enclosed Terms Sheet describes the interest rates, fees, and certain other terms of your Account. This Agreement includes your credit application, the cardmember that we send with your credit card, and the Terms Sheet. You should read all of this information carefully and keep it for your records. Any use of this Account constitutes acceptance of this Agreement.

**1. How to Use Your Account.** You can use your Account to make purchases of goods and services wherever Visa or MasterCard is honored ("Purchases") and get cash advances from a participating financial institution or automated teller machine (ATM) ("Cash Advances"). We may offer you special checks that let you access your Account. These transactions are Cash Advances unless we tell you otherwise. You may have the opportunity to use your Account for Balance Transfers. These Balance Transfers will be treated as Cash Advances unless we tell you otherwise. Charges for cash equivalents such as money orders, traveler's checks, foreign currency, lottery tickets, casino gaming chips, and the like are also Cash Advances. The Account may be used only for personal, family, or household purposes. The Account may not be used for illegal activities, for Internet gambling, or for a business or commercial purpose.

**2. Your Credit Line.** Your initial credit line is shown on the cardmailer. Each Account billing statement will show your Credit Line, the portion of your Credit Line that may be used for Cash Advances (your "Cash Line"), and your available credit as of the Statement Date. Each day, your available credit may change depending on your Account transactions, even if a transaction is not yet included in your balance. For example, when you use your Account to reserve a rental car or hotel room, your reservation may reduce your available credit. If Balance Transfers are treated as Cash Advances, then the Balance Transfers are not subject to the Cash Line limits. However, if you choose to transfer a balance, it will decrease the amount you have available for Cash Advances.

We may increase or lower your Credit Line or your Cash Line based on Account activity, your credit records, or other information. We will let you know whenever we change your Credit Line or Cash Line. In addition, there may be a limit on the Cash Advances you may take at one time that is lower than your Cash Line (the "Cash Transaction Limit"). If your Account has a Cash Transaction Limit, it is shown on the Terms Sheet. There is also a daily limit on the Cash Advances you may obtain from an ATM (the "ATM Limit") as shown on the Terms Sheet. You may not exceed your Credit Line, Cash Line, Cash Transaction Limit, or ATM Limit, and we may decline any transaction that would cause you to do so. If you exceed your Credit Line or Cash Line, you must pay any overlimit amount immediately when we ask you for it, and an Overlimit Fee may apply (see section 5).

---

OR AGAINST ONE ACCOUNTHOLDER (OR JOINT ACCOUNT-HOLDERS) MAY NOT BE BROUGHT TOGETHER WITH CLAIMS BROUGHT BY OR AGAINST ANY OTHER ACCOUNTHOLDER.

**Arbitration Location and Costs:** Any arbitration hearing that you attend will take place in the federal judicial district where you live. If you cannot afford to pay the fees charged by the Administrator and the arbitrator or if you believe that such fees are too high, we will consider any reasonable written request by you for us to pay the fees. We will pay any fees or expenses we are required to pay by law. You will never be required to pay us any fees we have previously paid to the Administrator. Each party must bear the expense of that party's attorneys, experts, and witnesses, regardless of who wins the arbitration, except to the extent that applicable law or the Administrator's Rules provide otherwise.

**Governing Law:** This Agreement involves interstate commerce and this Provision is governed by the Federal Arbitration Act ("FAA"), United States Code, Title 9, Section 1 and following. The arbitrator must follow: (1) the FAA; (2) the substantive law, consistent with the FAA, related to any Claim; (3) statutes of limitations; and (4) claims of privilege recognized at law. Upon the timely request of either party, the arbitrator must provide a brief written explanation of the basis for the award. The arbitrator will decide the issue, in his or her sole discretion, consistent with the FAA, the Administrator's Rules, and this Provision. The arbitrator shall not apply any federal, state, or local rules of procedure and evidence or state local laws concerning arbitration proceedings.

**Obtaining Information:** After an arbitration has been started, including to a party's right to obtain information from the other party under the Administrator's Rules, either party may request more information from another party. A copy of such request must be provided to the other party. That party will then have the chance to object in writing within 30 days. The objection must be sent to the arbitrator and/or the other party. The arbitrator will decide the issue, in his or her sole discretion, within 20 days after any objection to providing such information is submitted.

**Effect of Arbitration Award:** Any appropriate court may enter judgment upon the arbitrator's award. The arbitrator's decision will be final and binding, except for any appeal right under the FAA and except for Claims involving more than $100,000. For these large Claims, any party may appeal the award to a three-arbitrator panel appointed by the Administrator. That panel will consider all over again any part of the initial award that any party asserts was incorrectly decided. The decision of the panel will be by majority vote and will be final and binding, except for any appeal right under the FAA. Unless applicable law provides otherwise, the fees charged by the Administrator and arbitrators for such an appeal will be paid by the appealing party, regardless of who wins the appeal. However, we will consider any reasonable written request by you for us to pay such fees. All other provisions of this Provision shall apply to any appeal to a three-arbitrator panel, and any reference in this Provision to a single arbitrator shall apply to the three-arbitrator panel.

**Continued Effect of Arbitration Provision:** This Provision will remain in force no matter what happens to you or your Account. For

---

example, it will remain in force even if: (1) your credit privileges are ended or put on hold; (2) you close your Account; (3) you repay your entire Account balance; (4) we begin a lawsuit to collect amounts we think you owe; or (5) you become bankrupt or insolvent or a bankruptcy or insolvency proceeding is begun, to the extent consistent with applicable bankruptcy law. If any portion of this Provision cannot be enforced for any reason, the rest of this Provision will continue to apply. In the event of any conflict or inconsistency between this Provision, on the one hand, and the Administrator's Rules or other provisions of this Agreement, on the other hand, this Provision will govern.

**Contacting Arbitration Administrators**

If you have a question about the arbitration companies who may serve as Administrator, would like to obtain a copy of their arbitration rules or fee schedule, or would like a Claim form, you can contact them as follows: National Arbitration Forum, P.O. Box 50191, Minneapolis, MN 55405, www.arb-forum.com, 1-800-474-2371, request the Code of Procedure; American Arbitration Association, 335 Madison Avenue, New York, NY 10017, www.adr.org, request the Arbitration Rules for the Resolution of Consumer-Related Disputes (for Claims under $10,000) or Commercial Arbitration Rules (for all other Claims); JAMS, 45 Broadway, 28th floor, New York, NY 10006, www.jamsadr.com, request the Financial Services Arbitration Rules and Procedures. You may also obtain copies of the rules and Claim forms of the Administrators by contacting Customer Service.

---

For Customer Service, to report lost or stolen credit cards, or if you have any questions, please call the toll-free Customer Service number on your statement or on the back of your card.

Providian National Bank  MEMBER FDIC

**PROVIDIAN**

© 2003 Providian Financial Corporation

NMA40003

1

11

12

dgyservice@jwylaw.com 35

Line Increase Offers. Your Account will be automatically reviewed for a higher Credit Line, based on Account activity, your credit records, or other information (which may include your income; please be sure to let us know if your income changes). You may earn automatic line increases at no extra cost. Additionally, you may receive line increase offers for a fee (see section 4).

3. Your Promise to Pay Us; Your Payments.

Billing Statements. Each month that your Account has a balance, we will send you a billing statement or, if law or regulation allows, we may provide you with an online statement at any Internet Web site we designate ("Web site"). Each statement will show all new transactions, fees, charges, payments, and credits that post to your Account in the billing cycle.

Minimum Payment. You will send us in U.S. dollars at least the Minimum Payment by the Payment Due Date according to the payment instructions on your statement or at our Web site. The Terms Sheet explains how we calculate your Minimum Payment. You may at any time pay more than the Minimum Payment Due or pay off your entire balance in full without incurring any additional charge for prepayment. No matter how large your payment in one billing cycle, you will need to make a payment in the following cycle if you have a balance.

Your Payments. When you use a checking account to make a payment, funds must be drawn on a U.S. office of the financial institution. If you send us a payment in an amount that we consider large under the circumstances, we may temporarily limit your available credit to make sure that we will receive the funds. If you have more than one account with us or any of our affiliates, and you send us a single payment intended to pay more than one of your accounts, we may apply your payment to the account(s) as we choose. We can accept late payments or partial payments, or checks and money orders marked "payment in full" or with similar restrictions, without losing our right to collect all amounts you owe us.

4. Finance Charge.

ANNUAL PERCENTAGE RATES ("APR").

Standard APRs. Your daily periodic rates for Purchases and Cash Advances (and corresponding APRs) are shown on the Terms Sheet. If your Account has one or more special Introductory APRs, each rate is also listed on the Terms Sheet.

Default APRs. The Terms Sheet may also include Default APRs. If it does, the Terms Sheet explains when these rates may apply.

Minimum Finance Charge. If there is a minimum FINANCE CHARGE on your Account, it is shown on the Terms Sheet.

Cash Advance Fee. If you take a Cash Advance, we may charge a fee, which is a FINANCE CHARGE, as shown on the Terms Sheet.

Processing Fee. If we charged you a processing fee to open your Account, it is a one-time FINANCE CHARGE and is shown on the Terms Sheet.

Balance Transfer Fee. If your Account offers Balance Transfers and you transfer a balance from another account to this Account, we may charge a fee, which is a FINANCE CHARGE. If so, the fee is shown on the Terms Sheet.

Line Increase Upgrade Fee. If you accept an offer to increase your Account's Credit Line, we may charge a fee, which is a FINANCE CHARGE. The range of possible fees is shown on the Terms Sheet. We will tell you the exact amount of the fee with each line increase offer.

Express Postage and Handling Fee. If, at your request, we send a card to you through an express mail service, we may charge a fee, which is a FINANCE CHARGE, as shown on the Terms Sheet.

Payment-by-Phone Fee. If you use our PaySmart™ service to make a single payment from your personal checking account to your credit card Account, we may charge a fee, which is a FINANCE CHARGE, as shown on the Terms Sheet.

5. Other Fees.

Annual Fee. The amount, if any, is shown on the Terms Sheet.

Second Card Fee. If you request and we issue a second card for an authorized user on your Account, we may charge a fee annually, as shown on this Terms Sheet.

Late Fee. If we do not receive at least the Minimum Payment by the Payment Due Date on your billing statement, we may charge a fee, as shown on the Terms Sheet.

Overlimit Fee. If your Account balance exceeds your Credit Line by 2% or more at any time during a billing cycle, we may charge an Overlimit Fee in the amount shown on the Terms Sheet. Fees and finance charges are included in your Account balance. We may charge an Overlimit Fee even if we authorize any transaction that contributes to your Account balance ultimately exceeding your Credit Line.

Returned Payment Fee. If your payment item is returned to us unpaid for any reason, we may charge a fee, as shown on the Terms Sheet.

Returned Check Fee. If you write a check on your Account (such as a Cash Advance check) that we return unpaid, we may charge a fee, as shown on the Terms Sheet.

Card Replacement Fee. If we issue you a replacement card at your request, we may charge a fee, as shown on the Terms Sheet.

Copy Fee. If permitted by law, we may charge a fee for each copy of a billing statement first sent to you more than three billing periods before your request. The amount of the fee is shown on the Terms Sheet. If your request relates to a billing error and you followed the procedures for billing errors described below, we will not charge (or we will reverse) the fee.

Stop Payment Fee. If you request a stop payment order or renewal of such an order, we may charge a fee, as shown on the Terms Sheet, if permitted by law.

6. How We Calculate Your Balance and the Finance Charge on Balances. Your Account has two Balance Categories: the Purchase Balance and the Cash Advance Balance. We calculate the finance charge for each Balance Category separately. For each Balance Category, we figure each day's balance by starting with your previous day's balance (including any unpaid finance charge), adding all debits for the current day, and subtracting all credits for the current day. Then we multiply the daily balance by the daily periodic rate that

applies to the Balance Category (see section 4). The resulting amount is that day's finance charge, which becomes part of the balance that is used for the next day's balance calculation. (A credit balance on any day is treated as a zero balance for that day and will not earn interest.) We determine the total finance charge on balances for the billing cycle by adding together each day's finance charge in the billing cycle for each Balance Category. The total finance charge on balances for the billing cycle will post to your Account on the last day of the billing cycle, shown on your billing statement as the Statement Date. A transaction that you made in an earlier billing cycle that does not post to your Account until the current billing cycle will be subject to the daily periodic rate in effect in the current billing cycle.

Grace Period for Purchases. If your Account has a grace period for purchases, the Terms Sheet describes it and explains how it works. Otherwise, there is no period in which you can repay your Account balances without incurring a finance charge.

When Balance Charges Begin to Accrue. Except as described in the Grace Period for Purchases section above, finance charges begin to accrue on a charge or other debit on the first day it is included in your Account balance as follows: (1) a Purchase is added to the Purchase Balance as of the day you make the charge; (2) a fee (except for a Cash Advance Fee) is added to the Purchase Balance on the day it posts to your Account; (3) a Cash Advance is added to the Cash Advance Balance as of the transaction date (the day you take the Cash Advance), except that a Cash Advance check is added to the Cash Advance Balance as of the day the check is presented to us for payment; (4) a Cash Advance Fee is included in the Cash Advance Balance on the day it posts to your Account; (5) funds electronically transmitted to transfer balances to other lenders are added to the Purchase Balance or the Cash Advance Balance, whichever is applicable, as of the date transmitted; and (6) other checks, including Balance Transfer checks or Convenience checks, are added to the Purchase Balance or Cash Advance Balance, whichever is applicable, as of the day the checks are presented to us for payment. Other debits are included in your Purchase Balance or Cash Advance Balance as of the day they post to your Account. Finance charges added to your Purchase Balance or Cash Advance Balance each day and post to your Account on the last day of the billing cycle.

Application of Payments. A payment or any other credit adjustment will reduce your Account balance as of the day it posts to your Account. (See section 3 for more information about your payments.) The Terms Sheet explains how we apply payments to your Account.

Calculation of Finance Charge on Balances. This paragraph explains how to determine your finance charge on balances. Your billing statement will show the Average Daily Balance for each Balance Category. For each Balance Category, you can multiply the Average Daily Balance by the number of days in the billing cycle, and then by the applicable daily periodic rate, to obtain the subtotal of the finance charge on balances. Add the two subtotals to determine your total finance charge on balances for the billing cycle.

7. Foreign Currency Transactions. The Terms Sheet explains how foreign currency transactions will be converted to U.S. dollars.

dgyservice@jwylaw.com 36

**8. Merchant Relations.** We are not responsible if a merchant or ATM does not honor your Account or does not return your Account card or check to you. If you have a dispute with a merchant regarding goods or services purchased with your Account, we are not responsible except as described under Your Billing Rights below.

**9. Account Changes.** We have the right to change any part of this Agreement or add or remove any term, condition, or requirement. If permitted by law, the change may be applied to any Account balance existing at the time of the change. We will give you written notice prior to the effective date of any such change, if required by law. We may sell, transfer, or assign your Account or our rights in this Agreement to another person or entity, and, if we do that, that person or entity will take our place in this Agreement.

From time to time, we may review your Account. Based on these reviews, we may decide to change your Account terms, including APRs and fees. In determining whether to change your Account terms, we consider your Account history with us, including your record of making timely payments, staying within established credit lines, and other indicators of responsible Account usage. We may also consider a variety of information about your Account to maintain with other companies, including (for example) the number and balances of such accounts, the length of time since they were opened, and your payment record. Other factors may include the number and timing of credit inquiries by other prospective lenders as reflected on your credit bureau reports. Your income also may be a factor, so you should be sure to keep us informed of any increase or decrease in your income.

If a change is made that increases the APR or APRs that apply to your Account, you will be given an opportunity to avoid the change by closing your Account and paying off any existing balance under the terms in effect prior to the change.

**10. Your Personal Information.**
**Changing Your Information.** You will give us at least 10 days notice if you change your name, home, mailing, or e-mail address or home or work phone numbers. You will also let us know if your income changes and provide us with any updated financial information we may ask for. We may obtain information about you from others, including consumer reporting agencies ("credit bureaus").

**Credit Reporting; Inaccurate Information.** You authorize us to furnish information concerning your Account to credit bureaus and others who may properly receive such information. If there is an authorized user on your Account, we may also furnish information to credit bureaus and others who may properly receive such information in the name of the authorized user. We normally will not report you to the major credit bureau(s) until you start to use your Account (make a purchase, balance transfer, cash advance, and/or payment), generally 30 to 60 days after your first transaction. As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit bureau if you fail to fulfill the terms of your credit obligations. You may provide written notification to us at the Customer Service address shown on your billing statement (or other addresses or e-mail addresses we may specify) if you believe we have inaccurate information about you, or that we have reported or may report inaccurate information about you to a credit bureau.

**11. Our Promotional Communications.** If you do not want to receive future offers from Providian, you may inform us in writing by sending your name and address to Providian, P.O. Box 7200, San Francisco, CA 94120-9851. Please allow 4 to 6 weeks for this request to take effect.

Privacy. We send you the Providian Privacy Policy when we open your Account. You may also obtain the policy by contacting Customer Service at the number on your billing statement or visiting www.providian.com.

**12. How You and We Will Communicate.** We may send you a notice either by: (1) U.S. mail, addressed to you at the address shown in our records, or (2) e-mail, at your e-mail address shown in our records, as permitted by law. Any notice you send to us must be mailed to the Customer Service address shown on your billing statement (or other addresses or e-mail addresses we may specify). We are not responsible for undelivered mail or e-mail.

**13. Unauthorized Use; Lost Card.** Each credit card issued on your Account must be signed immediately upon receipt. You will safeguard your Account card(s) and checks and your Personal Identification Number (PIN) that provides access to ATMs. You will keep your PIN separate from your card. If you discover or suspect that the card is lost or stolen or that there may be an unauthorized transaction on your Account, you will notify us promptly by telephoning us at the number shown on the back of your card (or other telephone numbers we may specify). You should call us even though you may also notify us in writing. You will have no liability for unauthorized use of your Account. Keep in mind, however, that if you authorize someone else to use your Account, you may be responsible for all of their charges (even if they exceed your authorization). If you report or we suspect unauthorized use of your Account, we may suspend your credit privileges until we resolve the problem to our satisfaction or issue you a new card.

**14. Our Standards in Servicing Your Account.** Your Account will be processed through automated means. We will not be at fault if we do not examine all items we process. Therefore, you should be careful to keep a record of all your Account transactions, save your Purchase and Cash Advance receipts, check your monthly billing statements against your records, and notify us promptly of any unauthorized transactions or errors.

**15. If You or We Close Your Account.** We may close your Account or limit your credit privileges at any time for any reason not prohibited by law. If we are required by law to give you notice, we will do so. You may close your Account by notifying us in writing. You will return to us or destroy your credit card and any Account checks at our request. If your Account is closed, finance charges and other fees will continue to be assessed; payments will continue to be due; and all other applicable provisions of this Agreement will remain in effect until all your obligations are satisfied.

**16. If You Do Not Honor Your Agreement.** Your Account will be in default (unless prohibited by law) if any of the following events occur. (1) you were not eligible for the Account at the time it was opened; (2) you fail to pay any amount due to us under this Agreement or any

other agreement; (3) you fail to pay any amount due to another creditor; (4) any payment item is returned unpaid; (5) you fail to comply with any part of this Agreement; (6) any information you give us proves to be incomplete or false; (7) your death, bankruptcy, or insolvency or legal incompetence; (8) a bankruptcy petition is filed by or against you; or (9) we believe in good faith that you may not pay or perform your obligations under this Agreement. If you default, we may (unless prohibited by law), without further demand or notice: (1) cancel your credit privileges; (2) declare your Account balance immediately due and payable; (3) charge you for our reasonable collection costs; and (4) pursue any available legal remedy. If you default, the unpaid Account balance will continue to accrue interest and other fees and charges as provided in this Agreement, even if we have sued you to collect the amount you owe. If we sue you or you sue us for breach of this Agreement, or for any other claim arising out of this Agreement, the prevailing side may recover reasonable attorney's fees and court costs to the extent not prohibited by law, including attorney's fees and court costs in any action or proceeding to enforce a judgment based on a claim arising out of this Agreement. If either you or we successfully assert a setoff, counterclaim, or partial defense to a suit, the court may withhold from the prevailing party all or any portion of the attorney's fees that the court considers equitable.

**17. How This Agreement Applies.** This Agreement is the complete and entire statement of the contract between you and us and will not be affected by any oral agreement. We may delay or waive enforcement of any provision of this Agreement without losing our right to enforce it if any other provision later. You waive the right to presentment, demand, protest, or notice of dishonor; any notice of nonpayment; and any right you may have to require us to proceed against anyone before we attempt to recover from you. If any term in this Agreement is made unenforceable through law, regulation, or court decision, all other provisions will remain in effect.

**18. Assignment.** We may transfer or assign our rights and duties under this Agreement to a third party. If state law requires that you receive notice of such an assignment, to protect the purchaser or assignee, we may notify you by filing a financing statement with the state's Secretary of State. You may not assign your rights and duties under this Agreement.

**19. Applicable Law.** No matter where you live, this Agreement and your Account are governed by the laws of the United States and the state of New Hampshire, including Chapter 384-B of the New Hampshire Revised Statutes Annotated. This Agreement takes effect when we accept it in New Hampshire. We extend credit to you from New Hampshire regardless of where you live or use your Account.

**20. Telephone Monitoring and Recording.** We treat all customer calls confidentially. Your telephone conversations with our representatives may be monitored and/or recorded for quality assurance purposes, unless, at the beginning of each telephone conversation, you tell us not to monitor or record the call.

MARYLAND RESIDENTS: You have the right to receive an answer to a written inquiry concerning the status of your Account.

NEW JERSEY RESIDENTS: Applicable law does not limit our rights under this Agreement, except that we must send you prior notice of any increase in the finance charge.

NEW YORK RESIDENTS: This Agreement begins on the first day we extend credit to you on your Account, as evidenced by a signed sales slip, memorandum, or otherwise.

OHIO RESIDENTS: The Ohio laws against discrimination require that all creditors make credit equally available to all creditworthy customers and the credit reporting agencies maintain separate credit histories on each individual upon request. The Ohio Civil Rights Commission administers compliance with this law.

WISCONSIN RESIDENTS: No provision of a marital property agreement, a unilateral statement, or a court decree adversely affects the interest of the creditor unless the creditor, prior to the time credit is granted, is furnished a copy of the agreement, statement, or decree or has actual knowledge of the adverse provision when the obligation to the creditor is incurred. Married applicants must furnish the applicant's Social Security number and the name and address of their spouse to Providian at P.O. Box 9087, Pleasanton, CA 94566-9087 within 15 days.

**Your Billing Rights—**
**Keep This Notice for Future Use**

This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

**Notify Us in Case of Errors or Questions About Your Bill**

If you think your bill is wrong, or if you need more information about an entry on your bill, write us, on a separate sheet, at our address for billing disputes listed on your bill. Write to us as soon as possible. We must hear from you no later than 60 days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following:
- Your name and Account number.
- The dollar amount of the suspected error.
- Describe the error and explain, to the extent you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

If you have authorized us to pay your credit card bill automatically from your checking account, you can stop the payment on any amount you think is wrong. To stop the payment, your letter must reach us three business days before the automatic payment is scheduled to occur.

Mail your letter to us at the address for billing disputes shown on your billing statement.

**Your Rights and Our Responsibilities**
**After We Receive Your Written Notice**

We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe the bill was correct. After we receive your letter, we cannot try to collect any amount you question or report you as delinquent. We can continue to bill you for the amount you

question, including finance charges. We can apply any unpaid amount against your credit line. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question.

If we find that we made a mistake on your bill, you will not have to pay any finance charge related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up the missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date that it is due. If you fail to pay the amount we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within 10 days telling us that you still refuse to pay, we must tell anyone we report you to that you question your bill. And we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is. If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your bill was correct.

**Special Rule for Credit Card Purchases**

If you have a problem with the quality of the goods or services that you purchased with our credit card and you have tried in good faith to correct the problem with the merchant, you may not have to pay the remaining amount due on the goods or services. There are two limitations on this right: (a) you must have made the purchase in your home state or, if not within your home state, within 100 miles of your current mailing address; and (b) the purchase price must have been more than $50. These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or services.

### ARBITRATION PROVISION

Arbitration is a method of deciding disputes outside the court system. This Arbitration Provision (the "Provision") governs when and how any disputes you and we may have will be arbitrated instead of decided in court.

**Certain Definitions:** Certain words used in this Provision have special meanings:

"We," "us," and "our" mean Providian National Bank (the "Bank") and also include: (1) the Bank's parent company, Providian Financial Corporation (the "Parent Company"); (2) all companies owned or controlled by the Parent Company or the Bank, including First Select Corporation; (3) any prior issuer of a credit account that we have acquired; (4) any company to which we transfer our rights under this Account Agreement (the "Agreement"); and (5) all of the employees or other individuals who manage these companies. Finally, if either you or we elect to arbitrate any Claim you bring against us, these terms include any other persons or companies whom you make Claims against in the same proceeding.

"Claim" means any dispute between you and us that arises as a result of or has anything at all to do with: (1) your Account; (2) the events leading up to your becoming an accountholder; (3) this Agreement; (4) any prior credit account or agreement relating to such account; or (5) your relationship with us. This includes disputes relating to any products, insurance, or other services offered to you

as an accountholder. This includes disputes about whether this Provision is valid or binding or about whether or when it applies. It includes disputes relating to constitutional provisions; statutes; ordinances; regulations; case law; compliance with the Agreement or any agreement related to any prior credit account; and wrongful acts of every type (whether intentional, fraudulent, reckless, or just negligent). It includes requests for money, for orders requiring you or us to take certain actions (which are sometimes referred to as "injunctive relief"), and for any other kind of relief. This Provision applies to Claims that arise prior to, on, or after the opening of your Account.

"Administrator" means the National Arbitration Forum, the American Arbitration Association, or JAMS. These companies administer arbitration proceedings. The arbitrator will be selected under the Administrator's Rules. You can select the Administrator if you give us written notice of your selection with your notice that you are electing to arbitrate any Claim or within 20 days after we give you notice that we are electing to arbitrate any Claim. If you do not select the Administrator on time, we will select one. If for any reason the Administrator you or we select is unable or unwilling to serve or continue to serve as Administrator, you will have 20 days to select a different Administrator.

**Starting an Arbitration:** You or we can give written notice of an intention to begin arbitration of a Claim or Claims or to require arbitration of the other party's Claim or Claims. This notice can be given by one party even if the other party has begun a lawsuit if such notice is given, any Claim will be resolved by arbitration under this Provision and the Administrator's Rules that are in effect at the time the Claim is filed with the Administrator. The arbitrator must be a lawyer with more than 10 years' experience or a retired judge. A copy of the Claim form may be obtained from the Administrator or from us. A party who has asserted a Claim in a lawsuit may still elect arbitration with respect to any Claim that is later asserted in the same lawsuit by any other party. All doubts about whether to arbitrate a Claim shall be resolved in favor of arbitration. We will not elect to arbitrate an individual Claim that you bring against us in "small claims" court. However, we may elect to arbitrate a "small claims" court Claim that is later sent or appealed to any different court.

**Important Limitations**

IF YOU OR WE ELECT TO ARBITRATE A CLAIM, YOU WILL NOT HAVE THE RIGHT TO PURSUE THAT CLAIM IN COURT OR HAVE A JURY DECIDE THE CLAIM. ALSO, YOUR ABILITY TO OBTAIN INFORMATION FROM US AND TO APPEAL IS MORE LIMITED IN AN ARBITRATION THAN IN A LAWSUIT. OTHER RIGHTS THAT YOU WOULD HAVE IF YOU WENT TO COURT MAY ALSO NOT BE AVAILABLE IN ARBITRATION. THE FEES CHARGED BY THE ADMINISTRATOR MAY BE HIGHER THAN THE FEES CHARGED BY A COURT. THE SAME LIMITATIONS ALSO APPLY TO US. IN ADDITION, IF YOU OR WE ELECT TO ARBITRATE A CLAIM: (1) NEITHER YOU NOR ANYONE ELSE ON YOUR BEHALF CAN PURSUE THAT CLAIM IN COURT IN A CLASS OR REPRESENTATIVE ACTION (SUCH AS A PRIVATE ATTORNEY GENERAL ACTION); (2) NEITHER YOU NOR ANYONE ELSE ON YOUR BEHALF CAN PURSUE THAT CLAIM IN THE ARBITRATION ON A CLASS-WIDE OR REPRESENTATIVE (SUCH AS A PRIVATE ATTORNEY GENERAL) BASIS; AND (3) CLAIMS BROUGHT BY

dgyservice@jwylaw.com 38

Providian National Bank
Visa® and MasterCard®
Account Agreement

Your Visa or MasterCard credit account (the "Account") allows you to make purchases by using your Visa or MasterCard card (the "Card") wherever it is honored, and to get cash advances from any participating financial institution. In this Agreement, "you" and "your" mean each person for whom we have opened an Account. "We," "our," "us," and "Providian" mean Providian National Bank or its assignee. This Agreement includes your credit application, the card carrier we send with your credit card, and the Account Agreement. This Sheet. You should read all of this information carefully and keep it for your records. All use of this Account constitutes acceptance of the Agreement. This Account may be used only for personal, family, household, or charitable purposes. The Account may not be used for illegal activities, for unlawful gambling, or for a business or commercial purpose. You and we agree as follows:

**1. Promise to Pay.** You promise to pay us when you use all amounts borrowed when you or someone else uses your Account (even if the amount charged exceeds your permanent credit line) plus transactions and charges to your Account, and collection costs we incur, including, but not limited to, reasonable attorney's fees and court costs. (If we sue you to collect a debt you owe us with the suit, we will pay your reasonable attorney's fees and court costs.)

**2. Payments.** We will send you a monthly statement showing your outstanding balance. You will pay in U.S. dollars (checks must be payable at a U.S. office of the bank on which is drawn on) at least the payment due as shown on your statement by the payment due date in accordance with payment instructions on your monthly statement. The Account Agreement Terms Sheet explains how we calculate your minimum payment. If your Account is past due or above the credit line, we may require more than the minimum payment, but we will notify you before doing so. If your payment is more than the payment due, it will be treated as a single payment and none of it will be applied to future payments due.

When we receive your payment check, we may, at our discretion, keep the check and present it electronically to the financial institution on which the check is drawn. If we do so, we will provide you with a copy of the check, your request.

We will accept late or partial payments, or payments marked "paid in full" or marked with other restrictions, without losing our right to collect all amounts owing under this Agreement.

**3. Finance Charges.** Except as described in the Grace period for Purchase Balance section of this Agreement, finance charges begin to accrue on a debit when it is included in either the Purchase Balance, which includes balance transfers ("Purchase Balance"), or the daily cash advance balance ("Cash Advance Balance") and continue to accrue until that balance is reduced to payment or credit. The Purchase and Cash Advance Balances are reduced by payments as of the date received, and by credits as of the date posted. The Account Agreement Terms Sheet explains how

1

ter in writing to allow that party to obtain more information from the other party. A copy of such request must be provided to the other party. That party will then have the chance to object in writing within 30 days. The objection must be sent to the arbitrator and the other party. The arbitrator will decide the issue, in his or her sole discretion, within 20 days after any objection to providing requested information is submitted.

**Effect of Arbitration Award:** Any appropriate court may enter judgment upon the arbitrator's award. The arbitrator's decision will be final and binding, except for any appeal right under the FAA and except for Claims invoking more than $100,000. For these large Claims, any party may appeal the award to a three-arbitrator panel appointed by the Administrator. That panel will consider all over again any part of the initial award that any party asserts was incorrectly decided. The decision of the panel will be by majority vote and will be final and binding, except for any appeal right under the FAA. Unless applicable law provides otherwise, the fees charged by the Administrator and the arbitrators for such an appeal will be paid by the appealing party, regardless of who wins the appeal. However, we will consider any reasonable written request by you for us to pay such fees. All other provisions of this Provision shall apply to any appeal to a three-arbitrator panel, and any reference in this Provision to a single arbitrator shall apply to the three-arbitrator panel.

**Continued Effect of Arbitration Provision:** This Provision will remain in force no matter what happens to you or your Account. For example, it will remain in force even if: (1) your credit privileges are ended or put on hold; (2) you close your Account; (3) you repay your entire Account balance; (4) we begin a lawsuit to collect amounts we think you owe; or (5) you become bankrupt or insolvent or a bankruptcy or insolvency proceeding is begun, to the extent consistent with applicable bankruptcy law. If any portion of the Provision cannot be enforced for any reason, the rest of this Provision will continue to apply. In the event of any conflict or inconsistency between this Provision and the Administrator's Rules or other provisions of this Agreement, on the other hand, this Provision will govern.

**Contacting Arbitration Administration**

If you have a question about the arbitration companies who may serve as Administrator, would like to obtain a copy of their arbitration rules or fee schedules, or would like a Claim form, you can contact them as follows: National Arbitration Forum, P.O. Box 50191, Minneapolis, MN 55405, www.arb-forum.com, 1-800-474-2371, request the Code of Procedure; American Arbitration Association, 335 Madison Avenue, New York, NY 10017, www.adr.org, request the Arbitration Rules for the Resolution of Consumer-Related Disputes (for Claims under $10,000) or Commercial Arbitration Rules (for all other Claims); JAMS, 45 Broadway, 28th floor, New York, NY 10006, www.jamsadr.com, request the Financial Services Arbitration Rules and Procedures. You may also obtain copies of the rules and Claim forms of the Administrators by contacting Customer Service.

For Customer Service, to report lost or stolen Credit Cards, or if you have any questions, please call the toll-free Customer Service number on your statement or the back of your Card.

Providian National Bank   MEMBER FDIC

PROVIDIAN

© 2003 Providian Financial Corporation

9/02
NAMD012

12

## AFFIDAVIT OF DAN G. YOUNG

STATE OF TEXAS      }

                      }

COUNTY OF LUBBOCK    }

BEFORE ME, the undersigned authority, on this day personally appeared Dan G. Young, known to me by the person whose name is subscribed to the foregoing instrument, who being by me duly sworn, acknowledged to me that he executed the same for the purposes and consideration there in expressed and, upon his oath deposed as follows:

1.    My name is Dan G. Young. I am over eighteen (18) years of age and otherwise competent to make this affidavit. I am the attorney of record for EQUABLE ASCENT FINANCIAL, LLC, and I am duly authorized to make this affidavit. I have personal knowledge of the facts stated herein, and they are all true and correct.

2.    I am an attorney licensed to practice in the courts of the State of Texas since November 1, 1983. My practice is primarily in the State and Federal District Courts of Texas, in consumer and business litigation matters. I am familiar with the attorneys' fees customarily charged in the county of this suit by attorneys for handling suits of this nature. I am also familiar with the attorneys' services normally required for the proper prosecution of such suits, and I performed or supervised the services rendered in this cause.

**Exhibit "B"**                         dgyservice@jwylaw.com 40

3. In this suit, the following services have been rendered for Plaintiff: communications with the client regarding the nature and amount of the claim; reviewing documentation upon which the claim is founded; drafting and filing Petition, drafting and filing Plaintiff's Motion for Summary Judgment, supporting Affidavit, and proposed final judgment; and performing miscellaneous other duties necessary to the proper representation of EQUABLE ASCENT FINANCIAL, LLC in this action.

4. Each of the above described services, together with those anticipated services reasonably required in collection of any judgment or in defense of any appeal, are reasonable and necessary to the proper prosecution of this case. In addition, the attorney's fees requested in the Motion are reasonable considering the contingency fee nature of this suit. Client's demand for payment was made upon Defendant prior to filing suit and the just amount owed was never paid or tendered.

5. In my opinion, taking into consideration the usual and customary attorneys' fees in this county, the amount in controversy, the legal questions involved, the fee arrangement with the client, the benefits conferred, and the time required, a reasonable and necessary attorneys' fees for EQUABLE ASCENT FINANCIAL, LLC for the attorney services rendered in the prosecution of this claim is $1,500.00,

conditional attorneys' fees of $1,500.00 in the event of appeal to the Texas Court of Appeals, and $2,500.00 in the event a petition for review is filed with the Texas Supreme Court.

Further Affiant Sayeth Not.



Dan G. Young

SWORN to and subscribed before me, the undersigned authority, on this the 24 day of March, 2015.

KIMBERLY A PRICE
Notary Public, State of Texas
My Commission Expires
June 13, 2017

Notary Public in and for the State of Texas

# TAB B

FILED FOR RECORD
6/2/2015 6:39:39 PM
DISTRICT CLERK
HENDERSON COUNTY
Carmen Delgado

NO. 2011-B-1051

| | | |
|---|---|---|
| EQUABLE ASCENT FINANCIAL, LLC § | | IN THE DISTRICT COURT |
| Plaintiff, | § | |
| | § | |
| V. | § | 392ND JUDICIAL DISTRICT |
| | § | |
| ANNA INMAN | § | |
| Defendant. | § | OF HENDERSON COUNTY, TEXAS |

## DEFENDANT'S RESPONSE TO
## PLAINTIFF'S MOTION FOR FINAL SUMMARY JUDGMENT

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES Defendant, Anna Marie Inman, Non-Movant herein, and requests this Honorable Court to DENY Movant's Motion for Final Summary Judgment.

### A. Introduction

1.    Plaintiff is Equable Assent Financial, LLC; Defendant is Anna Inman.

2.    Plaintiff sued Defendant for credit card debt.

3.    Defendant filed an amended answer of a general denial.

### B. Facts

4.    Plaintiff filed a motion for summary judgment on March 25, 2015 based on its cause of action for breach of contract.

5.    This case is set for hearing on plaintiff's motion for summary judgment on June 10, 2015, at 1:30 p.m.

### C. Argument

6.    A nonmovant in a traditional summary-judgment proceeding is not required to produce summary-judgment evidence until after the movant establishes it is entitled to summary judgment as a matter of law.

When a movant files a motion for summary judgment based on summary judgment evidence, the court can grant the motion only when the movant's evidence proves, as a matter of law, all the elements of the movant's cause of action or defense, or disproves the facts of at least one element in the non-movant's cause or defense.

When evaluating a motion for summary judgment, the court must assume all the non-movant's proof is true, indulge every reasonable inference in favor of the non-movant; and resolve all doubts about the existence of a genuine issue of material fact against the movant.

7.    Defective Business Records Affidavit. The Court should deny plaintiff's motion for summary judgment because the affidavit attached to plaintiff's motion is defective and does not present competent summary-judgment evidence. Specifically, this "Affidavit of Claim" does not meet the requirements of a business records affidavit as set out in Texas Rules of Evidence 902(10), so that the affidavit is inadmissible hearsay. Although the affiant swears that plaintiff's books and records contain information of the account, and that the records are made in the ordinary course of business, affiant does not state that there are any records attached to the affidavit. The rule requires that the records be authenticated, and this affidavit does not authenticate anything. The rule also requires the affidavit to reference the number of pages or records as well as whether the attached records are originals or copies, neither of which plaintiff does. *See, TRE 902(10).* The result is that plaintiff has no competent summary-judgment evidence.

8.    Unauthenticated Bill of Sale. The Court should deny plaintiff's motion for summary judgment because the "Bill of Sale" of Chase and subsequent pages (pages 5 – 14) of plaintiff's motion) are unauthenticated and do not present competent summary judgment evidence. Specifically, because there is nothing in plaintiff's motion for summary judgment that

authenticates the "Bill of Sale" or the documents in the following pages 6 - 14, they are hearsay.

Further, even if "Bill of Sale" was not hearsay, it is no evidence that plaintiff bought defendant's account. The "Bill of Sale" references "certain receivables, judgments, or evidences of debt **described in Exhibit 1 attached hereto** and made part hereof for all purposes." (Emphasis added.) However, there is no Exhibit 1 attached. The "Bill of Sale" further references that "information related to Borrowers and the Accounts as kept and maintained in the business records of the Seller in its ordinary course of business is **contained in the File referenced in Exhibit C hereto and Exhibit D of the Credit Card Purchase Agreement** and transferred to Purchaser herewith." (Emphasis added). There is no Exhibit 1, Exhibit C or Exhibit D attached. The Chase "Bill of Sale" and pages following in 6 – 14 do not specify any account that was bought by plaintiff, and so do not show that plaintiff is buying defendant's account. It only suggests that Chase sold unspecified accounts to Hilco Receivables, LLC. The Chase "Bill of Sale" with pages 6 – 14 are not competent summary-judgment evidence that plaintiff bought an account of a creditor to which defendant owed a debt.

9.  Unathenticated Providian Account Agreement. The Court should deny plaintiff's motion for summary judgment because the Account Agreement on pages 35 – 39 of plaintiff's motion for summary judgment is unauthenticated and does not present competent summary judgment evidence. Specifically, the Account Agreement is hearsay. Further, even if the Account Agreement was not hearsay, it is no evidence that defendant was provided an extension of credit, or that defendant had any relationship with Chase or plaintiff. The Account Agreement on pages 35 – 39 of plaintiff's motion is entitled "Providian Visa or Mastercard Account Agreement." There is no mention of defendant, or plaintiff, or even Chase. This is not competent summary-judgment evidence of any element of plaintiff's cause of action.

10.   Illegible and Unauthenticated Documents. The Court should deny plaintiff's motion for summary judgment because the documents attached to plaintiff's motion in pages 15 –34 are unauthenticated and illegible, and do not present competent summary judgment evidence. Specifically pages 15 – 34 of plaintiff's motion appear to be copies of Chase statements, but they are in print so small that they are illegible. The addressee on the statements, the charges made, the amounts of the charges, and everything else on the statements is illegible. This is insufficient evidence of a valid contract and insufficient evidence of any amount of an alleged debt. These documents are no evidence of the terms of an agreement or that defendant intended to be bound by a specific agreement. *See, Uribe v. Pharia, LLC, 2014 WL 3555529 (Tex.App.-Corpus Christi 2014).* .

11.   Failure to prove all elements of a cause of action as a matter of law. The Court should deny plaintiff's motion for summary judgment because the plaintiff failed to Plaintiff failed to prove as a matter of law all of the elements of its cause of action for breach of contract. When a movant files a motion for summary judgment based on the summary-judgment evidence, the court can grant the motion only when the movant's evidence, as a matter of law, either proves all the elements of the movant's claim or defense or disproves the facts of at lease one element of the nonmovant's claim or defense. *See, Park Place Hosp. v. Estate of Milo, 909 S.W.2d 508, 511 (Tex. 1995).*

Specifically, plaintiff did not present any competent summary-judgment evidence that defendant entered into an agreement, that defendant defaulted, or that plaintiff owns the debt. Plaintiff also failed to present any competent summary-judgment evidence of the amount of the debt owed. Plaintiff's motion for summary judgment alleges a breach of contract claim that "Defendant was provided an extension of credit, that Defendant defaulted on Defendant's

obligations under the agreement, and that as a result Plaintiff is entitled to the sums due and owing." See Plaintiff's Motion for Summary Judgment, page 2.

a. Element of Extension of Credit to Defendant. As discussed above in paragraphs 7 and 10 above, the defective business records affidavit ("Affidavit of Claim") does not meet the requirements of an exception to the hearsay rule. The Affidavit further does not authenticate any of the documents following it, so that all of the documents attached to plaintiff's motion for summary judgment are hearsay.

As discussed in paragraph 9 above, the copy of the "Account Agreement" is unauthenticated, and does not mention defendant, or even Chase.

There is no competent summary-judgment evidence of a contract.

b. Element of Default by Defendant. As discussed above in paragraph 9, the defective business records affidavit ("Affidavit of Claim") does not meet the requirements of an exception to the hearsay rule. The Affidavit further does not authenticate any of the documents following it, so that all of the documents attached to plaintiff's motion for summary judgment are hearsay.

As discussed in paragraph 10 above, the copies of the Chase statements are unauthenticated and illegible.

There is no competent summary-judgment evidence of a default by defendant, or of any amount of any alleged default.

c. Element of Plaintiff Owning the Debt. As discussed above in paragraph 7, the defective business records affidavit ("Affidavit of Claim") does not meet the requirements of an exception to the hearsay rule. The Affidavit further does not authenticate any of the documents following it, so that all of the documents attached to plaintiff's motion for summary judgment are hearsay.

As discussed in paragraph 8 above, the Chase "Bill of Sale" is unauthenticated and hearsay. The Chase "Bill of Sale" and pages following in 6 – 14 do not specify any account that was bought by plaintiff, and so do not show that plaintiff is buying defendant's account.

As discussed in paragraph 9 above, the copy of the "Account Agreement" is unauthenticated, and hearsay. Further, it does not mention defendant, or even Chase, but rather is a Providian document.

As discussed in paragraph 10 above, the copies of the statements on pages 15 – 34 of plaintiff's motion are unauthenticated and hearsay. Further, these documents are illegible.

There is no competent summary-judgment evidence that plaintiff owns the debt.

### D. Conclusion

12. Plaintiff has presented no competent summary-judgment evidence. The "Affidavit of Claim" attached to plaintiff's motion for summary is not a business records affidavit that meets the requirements of TRE 910(10), so that the affidavit is not admissible evidence. The "Bill of Sale" and all of the subsequent documents are unauthenticated hearsay, with some also illegible, and are therefore not admissible evidence. There is no evidence that there is a contract with defendant, no evidence that plaintiff owns the debt, no evidence that defendant defaulted, and no evidence of the amount of the debt. Plaintiff has the burden to prove all of the elements of its claim as a matter of law, and plaintiff failed to meet this burden. The motion for summary judgment should be denied.

### E. Prayer

13. For these reasons, defendant asks the Court to deny Plaintiff's Motion for Summary Judgment. If the Court grants plaintiff's motion for summary judgment, defendant asks the

Court to overrule defendant's objections so they will be preserved for appeal.

Respectfully submitted,

LONE STAR LEGAL AID

By: _____
Jane Parreiras-Horta
Texas Bar No. 08200400
Email: jparreirashorta@lonestarlegal.org
110 N. College Ave., Suite 302
Tyler, TX 75702
Tel. (903) 595-4781
Fax. (903) 595-3370
Attorney for Defendant
Anna Marie Inman

## CERTIFICATE OF SERVICE

I certify that on June ___, 2015 a true and correct copy of Defendant's Response to Motion for Summary Judgment was served on Dan G. Young electronically through the electronic filing manager.

Jane Parreiras-Horta

# TAB C

"NOTICE: THIS DOCUMENT CONTAINS SENSITIVE DATA."

FILED FOR RECORD
At_____O'clock_____M

JUN 1 0 2015

District Clerk
Henderson County, Texas
By_____ A.L. Deputy

NO. 2011B-1051

| | | |
|---|---|---|
| EQUABLE ASCENT FINANCIAL, LLC | § | IN THE 392nd JUDICIAL |
| | § | |
| v. | § | DISTRICT COURT OF |
| | § | |
| Anna Inman | § | HENDERSON COUNTY, TEXAS |

## FINAL SUMMARY JUDGMENT

On this day came on to be heard the above numbered and titled cause; and it appearing to the Court that the Plaintiff is entitled to prevail and is entitled to relief sought in Plaintiff's Motion for Summary Judgment, and the court has jurisdiction and venue over this cause;

**IT IS THEREFORE, ORDERED, ADJUDGED AND DECREED** that EQUABLE ASCENT FINANCIAL, LLC recover judgment on its claims against Defendant, Anna Inman, in the amount of $6165.80, representing the amount due under the account sued upon and for attorney's fees in the amount of $1,500.00, conditional attorney's fees of $1,500.00 in the event of appeal to the Texas Court of Appeals, and $2,500.00 in the event a petition for review is filed with the Texas Supreme Court, and that Plaintiff recover its costs of suit, together with post-judgment interest at the rate of 5.0000% per year until paid on all amounts awarded in this judgment.

73

IT IS FURTHER ORDERED that execution shall issue for this judgment. All relief not expressly granted is denied. This judgment finally disposes of all claims and parties and is appealable.

SIGNED this 10th day of June, 2015.

_____
JUDGE PRESIDING

# TAB D

NO. 2011B-1051

| EQUABLE ASCENT FINANCIAL, LLC Plaintiff, | § | IN THE DISTRICT COURT |
|---|---|---|
| | § | |
| | § | |
| V. | § | 392ND JUDICIAL DISTRICT |
| | § | |
| ANNA MARIE INMAN | § | |
| Defendant. | § | OF HENDERSON COUNTY, TEXAS |

## DEFENDANT'S MOTION FOR RECONSIDERATION/MOTION FOR NEW TRIAL AND REQUEST FOR WRITTEN RULING ON DEFENDANT'S OBJECTIONS TO SUMMARY JUDGMENT EVIDENCE

TO THE HONORABLE JUDGE OF SAID COURT:

Defendant, Anna Marie Inman, asks the Court to reconsider the granting of summary judgment, in the interest of justice and fairness, and brings this Motion for Reconsideration and Request for Written Ruling on Defendant's Objections to Summary Judgment Evidence.

### A. Introduction

1. Plaintiff is Equable Ascent Financial, LLC; defendant is Anna Marie Inman.

2. Plaintiff sued defendant for credit card debt.

### B. Facts

3. Plaintiff filed a motion for summary judgment based on breach of contract.

4. Defendant filed a response to the motion for summary judgment that plaintiff presented no competent summary judgment evidence, specifically that the affidavit attached to plaintiff's motion does not meet the requirements of a business records affidavit, the documents following the affidavit are unauthenticated hearsay, and that plaintiff failed to prove all elements of its cause of action as a matter of law.

5. The Court granted the motion for summary judgment and signed a summary judgment for

Equable Ascent Financial, LLC on June 10, 2015.

## C. Argument & Authorities

6. The Court should reconsider and deny summary judgment/grant a new trial because it erred by granting the motion for summary judgment.

7. The Court erred by granting the motion for summary judgment because the affidavit of Jeff Hasenmiller (the "Affidavit of Claim") stated mere legal conclusions and did not provide any summary-judgment evidence. *See, Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex. 1984); *Life Ins. Co. v. Gar-Dal, Inc.*, 570 S.W.2d 378, 381-82 (Tex. 1978); *801 Nolana, Inc. v. RTC Mortgage Trust*, 944 S.W.2d 751,754 (Tex. App. – Corpus Christi 1997, writ denied). The Affidavit of Claim by itself is not sufficient to support summary judgment because the conclusory statements in it are not supported by facts. The affiant provides conclusions, but does not provide the required underlying facts to support the conclusions, so that the affiant's testimony is conclusory and legally insufficient to support a judgment. *See, Gardner v. Abbott*, 414 S.W.3d 369, 385 (Tex.App.-Austin 2013). Each of the paragraphs 4, 5, 6 and 7 in the Affidavit of Claim are conclusions unsupported by facts, as the Affidavit of Claim did not authenticate the documents that follow, so that the documents are hearsay, and rendered inadmissible. Each of these paragraphs 4 through 7 in the affidavit is an element of plaintiff's cause of action that plaintiff must prove as a matter of law to prevail in summary judgment. Since plaintiff has only unsupported conclusions in his Affidavit of Claim, he does not have evidence that supports summary judgment.

## D. Request for Written Ruling on Defendant's Objections
## To Summary-Judgment Evidence

8. Defendant requests the Court to make a written ruling on each of the her objections to plaintiff's summary judgment evidence to ensure that any error by the trial court is preserved.

*See, Jones v. Ray Ins. Agency,* 59 S.W.3d 739, 753 (Tex.App.-Corpus Christi 2001), pet. denied 92 S.W.3d 530 (Tex.2002).

## E. Conclusion

9. The "Affidavit of Claim" has only conclusory statements concerning the elements of the plaintiff's cause of action. The documents following the affidavit are unauthenticated and inadmissible, and are not facts. Legal conclusions not supported by facts have no probative force and will not support summary judgment.

## F. Prayer

10. For these reasons, and in the interest of justice and fairness, defendant asks the Court to reconsider its granting of the plaintiff's motion for summary judgment and deny the motion for summary judgment/grant a new trial. Defendant further asks the Court to make a written ruling on each of defendant's objections to summary judgment evidence.

Respectfully submitted,

LONE STAR LEGAL AID

By: _____
Jane Parreiras-Horta
Texas Bar No. 08200400
Email: jparreirashorta@lonestarlegal.org

110 N. College Ave., Suite 302
Tyler, TX 75702
Tel. (903) 595-4781
Fax. (903) 595-3370
Attorney for Defendant
Anna Marie Inman

## CERTIFICATE OF SERVICE

I certify that on July 2, 2015, a true and correct copy of Defendant's Motion for New Trial was served on Dan G. Young electronically through the electronic filing manager.

Jane Parreiras-Horta

# TAB E

FILED FOR RECORD
At __9:35__ O'clock __A__ M

AUG 31 2015

District Clerk
Henderson County, Texas
_____ __A__ Deputy

NO. 2011-B-1051

| | | |
|---|---|---|
| EQUABLE ASCENT FINANCIAL, LLC | § | IN THE DISTRICT COURT |
| Plaintiff, | § | |
| | § | |
| V. | § | 392ND JUDICIAL DISTRICT |
| | § | |
| ANNA INMAN | § | |
| Defendant. | § | OF HENDERSON COUNTY, TEXAS |

## ORDER

On August 31, 2015, the Court reconsidered this case.

_____ The Court, acting within its plenary power under Tex. R. Civ. P. 329b(e), vacates the Final Summary Judgment. IT IS THEREFORE ORDERED that the Final Summary Judgment signed June 10, 2015 is VACATED.

_____ The Court denies Defendant's request to deny summary judgment.

The Court makes the following written rulings on the defendant's objections to plaintiff's summary judgment evidence:

1. The "Affidavit of Claim" attached to plaintiff's motion states mere legal conclusions that are not supported by facts, so that the affiant's testimony is conclusory and legally insufficient to support a judgment. This objection is SUSTAINED / OVERRULED

2. The "Affidavit of Claim" attached to plaintiff's motion does not meet the requirements of a business records affidavit so that all documents attached are inadmissible hearsay, and do not present competent summary-judgment evidence. This objection is SUSTAINED / OVERRULED

3. The "Bill of Sale" attached to plaintiff's motion is unauthenticated and not competent summary-judgment evidence. This objection is SUSTAINED / OVERRULED

4. The "Bill of Sale" attached to plaintiff's motion is not competent summary



judgment evidence that plaintiff bought an account of a creditor to which defendant owed a debt. This objection is SUSTAINED / OVERRULED

5. The Providian Account Agreement attached to plaintiff's motion is unauthenticated and does not present competent summary-judgment evidence. This objection is SUSTAINED / OVERRULED

6. The Providian Account Agreement attached to plaintiff's motion is no evidence that defendant was provided with an extension of credit, or that defendant had any relationship with plaintiff. This objection is SUSTAINED / OVERRULED

7. The documents attached to plaintiff's motion in pages 15 – 34 are unauthenticated and illegible, and do not present competent summary-judgment evidence. This objection is SUSTAINED / OVERRULED

8. The plaintiff failed to present competent summary judgment evidence that proved all elements of the cause of action for breach of contract as a matter of law. This objection is SUSTAINED / OVERRULED

SIGNED on ___31ˢᵗ of August___, 2015.

_____
JUDGE PRESIDING

APPROVED AS TO FORM:

_____
Jane Parreiras-Horta
Attorney for Defendant Anna Marie Inman
LONE STAR LEGAL AID
Email: jparreirashorta@lonestarlegal.org
110 N. College Ave., Suite 302
Tyler, TX 75702

Order August 31, 2015 – Inman
Page 2 of 3

Tel. (903) 595-4781
Fax. (903) 595-3370

Dan G. Young
Attorney for Equable Ascent Financial, LLC
Jenkins, Wagnon & Young, P.C.
Email: dgyservice@jwylaw.com
P.O. Box 420
Lubbock, Texas 79408-0420
Tel. (806) 687-9172
Fax. (806) 771-8755